NEACY, Respondent, vs. CITY OF MILWAUKEE and others, Appellants.

*November 19, 1912—January 7, 1913.*

*Municipal corporations: Powers: Construction of lighting plant: Use of streets: Diversion of fund: Certificate of convenience and necessity, when required: Issuance of bonds: Injunction: Taxpayer's action: Pleading.*

1. A taxpayer's action may be maintained to restrain the illegal issuance of municipal bonds or the diversion of public funds to an unlawful purpose.

2. Where, in such an action, plaintiff claims that municipal bonds are invalid, the facts showing invalidity should be specifically and positively alleged.

3. Where a city was authorized to use the proceeds of bonds in the construction of a municipal electric light plant, the expenditure of a part of such proceeds to install machinery at the city's refuse incinerator for the purpose of using surplus steam there being wasted, such machinery to constitute an auxiliary plant and a unit of the main electric light plant, and to be used primarily for lighting purposes, was not an unlawful diversion of the fund, even though, incidentally, power generated in such auxiliary plant and not needed for lighting was to be used to operate the city's flushing station, it being intended that the value of the power so used should be charged to the sewerage fund and credited to the lighting fund.

4. Express statutory authority having been conferred upon cities by sec. 926—11, Stats. (1898), to light streets, public buildings and grounds, it necessarily follows that they might use the streets for the accomplishment of such purpose.

5. Where a city issued bonds, purchased a site, and expended money toward the construction of a municipal electric light plant before the passage of the public utility act (Laws of 1907, ch. 499) and before there was in existence in such city a plant operated under an indeterminate permit, no certificate of convenience and necessity from the railroad commission is requisite to enable it to go on and complete such plant and use the streets to distribute the electricity generated thereby.

6. Under ch. 75, Laws of 1911, which legalizes under certain conditions invalid bonds issued by cities for the purchase or construction of electric lighting plants, and authorizes the use of the proceeds for the purpose intended, a city which has complied with such conditions is not required to obtain, in addition, a certificate of convenience and necessity from the railroad commission.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

This action was brought by the plaintiff, a taxpayer of the city of *Milwaukee,* against the defendant city and its officers to restrain them from constructing and operating a municipal electric light and power plant, using money and issuing and selling bonds for that purpose.

Between 1902 and 1908 the defendant city took proceedings for the authorization and issue of bonds for the construction of a municipal electric lighting plant before the first suit (*Neacy v. Milwaukee,* 142 Wis. 590, 126 N. W. 8) was commenced. One hundred and fifty thousand dollars of these bonds were sold and $60,000 of the proceeds thereof invested in a site for a plant. This issue of bonds was subsequently declared void by this court. *Neacy v. Milwaukee,* 142 Wis. 590, 126 N. W. 8. Other money was spent before the above decision, in addition to the $60,000 for the land for a site, by way of expense for engineering, plats, and plans and specifications for machinery.

In May, 1911, the legislature of the state of Wisconsin passed ch. 75, Laws of 1911 (sec. 927—19a, Stats.), whereby provision was made to validate the bonds theretofore held invalid by this court, and the defendant city took the steps indicated by the law for the purpose of validating the bonds, and other steps were taken to carry on the proposed work.

Application was made for a temporary injunction, which resulted in the making of the following order by the court:

"That said defendants, and each and every of them, be and are hereby, until the trial and final determination of this action by this court, strictly restrained and enjoined from doing any act or thing looking to or in connection with the making or entering into any new contract or incurring any new or additional liability for the construction, erection or purchase of any municipal light or power plant, or any part thereof, or any equipment or machinery therefor, or for machinery, equipment or plant as described and referred to in the complaint herein in Exhibit A thereto annexed.

"That said defendants, and each and every of them, be and are hereby, until the trial and final determination of this action by said court, strictly restrained and enjoined from diverting or transferring any further, other or different sums of money from that certain fund of the city of *Milwaukee* known as the municipal lighting fund, as referred to and described in the complaint herein, and from drawing or signing any city order for the payment of any money, or from paying any money or sum of money whatsoever, for the construction, erection or purchase of any municipal light plant, or any equipment or machinery therefor, in any way whatsoever in connection with or incident to such plant, its machinery or equipment, except upon any contract therefor heretofore duly entered into by said defendant city of *Milwaukee.*

"It is hereby further ordered that said defendant, city of *Milwaukee,* and said defendants, . . . be and are hereby, until the trial and determination of this action by said court, strictly enjoined and restrained from issuing, selling or disposing of the one hundred thousand dollars of municipal electric light bonds described in the complaint in this action, or any part or portion thereof, and from attesting, signing, countersigning or attaching the corporate seal of said city of *Milwaukee* to said bonds, or any of them. . . ."

The appeal is from the foregoing order.

*Daniel W. Hoan,* city attorney, and *Garfield S. Canright,* assistant city attorney, for the appellants.

For the respondent there was a brief by *Quarles, Spence & Quarles,* and oral argument by *W. C. Quarles.*

Kerwin, J. The order appealed from was granted upon the complaint, answer, affidavits, and certain proceedings of the common council of the defendant city. The material facts are substantially undisputed. It was established upon the hearing of the motion for injunction that the action was brought by the plaintiff on behalf of himself and all other taxpayers similarly situated; that the defendant city submitted a proposition to the voters whether $500,000 of municipal electric light bonds should be issued, which was car-

ried, and between January 1, 1902, and January 1, 1908, the
city did issue $150,000 bonds and sold the same and received
therefor $150,000 and purchased a piece of real estate in the
city of *Milwaukee* for a site for said municipal electric light
plant and paid $60,000 therefor; that the bonds were there-
after declared void by this court, and in May, 1911, the legis-
lature of this state passed an act known as ch. 75, Laws of
1911, entitled "An act to create section 927—19*a*, to legalize
bonds issued and sold by any city for the construction or pur-
chase or erection and maintenance of an electric lighting
plant, and to legalize the expenditure of the proceeds of such
bonds;" that between July and August, 1911, the defendant
city took proceedings for the installing of machinery in con-
nection with a refuse incinerator in operation in defendant
city and expended some $60,000 of the electric light bonds
fund for such purpose, which said plant was to be an auxiliary
plant and a unit of the city's main electric plant, the pur-
pose of such auxiliary plant being to use the waste steam at
the incinerator plant; that the defendant city has not ob-
tained from the Wisconsin railroad commission, under
ch. 499 of the Laws of 1907, any certificate of convenience
and necessity; that there are several public utilities operating
in the defendant city, and, among others, the Milwaukee
Electric Railway & Light Company, which last named com-
pany had had a contract with the defendant city for the
purchase of electric light in connection with municipal needs
of defendant city, and that said the Milwaukee Electric Rail-
way & Light Company owns an indeterminate permit under
the laws of this state; that between September, 1910, and
March, 1912, the defendant city issued $100,000 of munici-
pal electric light bonds and was about to sell the same before
this action was commenced and use the proceeds for the con-
struction of a plant for furnishing electric light for lighting
the streets, public grounds, and public buildings of the de-
fendant city and for furnishing power for municipal pur-

poses in said defendant city; that prior to the 11th day of July, 1907, the defendant city spent, in addition to the $60,000 for a site in connection with the construction of the electric light plant in question, large sums of money, and prior to the passage of ch. 596, Laws of 1911, spent other large sums of money, aggregating upwards of $12,000.

There are some general allegations in the complaint denying the regularity of the proceedings of the common council of the defendant city, and also the validity of the last issue of bonds, and some charges respecting the unlawful diversion of funds. . These allegations are positively denied in the answer.   But the facts which go to the merits of the controversy here are undisputed, or substantially so.

On the part of the appellants it is insisted that the present action cannot be maintained by the plaintiff as a taxpayer; that the acts of the city which have been enjoined are lawful, and that as to the auxiliary plant the action cannot be maintained because of laches.   The respondent seeks to sustain the order below on the following grounds: First, that the 1912 issue of bonds was illegal; second, that the construction of the auxiliary plant by diverting the proceeds of the 1906 issue of bonds for that purpose was unauthorized; third, that the city has no right to use the streets for stringing or laying its electric wires and cables; and fourth, that the defendant city cannot construct an electric light and power plant until it has obtained a certificate of convenience and necessity from the railroad commission.   The last ground seems to be mainly relied upon for affirmance.

It is contended by counsel for appellants that the plaintiff as a taxpayer of the defendant city cannot maintain this action.   But we think the question is not new in this state, and must be regarded settled against the contention of appellants. *Neacy v. Milwaukee,* 142 Wis. 590, 126 N. W. 8; *Kyes v. St. Croix Co.* 108 Wis. 136, 83 N. W. 637; *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 83 N. W. 851; *Rice*

*v. Milwaukee,* 100 Wis. 516, 76 N. W. 341; *Oconto City W. S. Co. v. Oconto,* 105 Wis. 76, 80 N. W. 1113; *Weik v. Wausau,* 143 Wis. 645, 128 N. W. 429; *Herman v. Oconto,* 110 Wis. 660, 86 N. W. 681.

The 1906 issue of bonds was legalized by ch. 75, Laws of 1911, so there is no question made upon these bonds, and the auxiliary plant was constructed out of that issue, and the validity of the 1912 issue in no way affects the right of the city to construct the auxiliary plant. The attempt of the respondent to show that the 1912 issue is invalid is feeble. The allegations are general and there is no particular specification of grounds of invalidity. Besides, such allegations are on information and belief, and are positively denied in the answer. The facts showing invalidity presumably are such as to be capable of specification and positive allegation, and the rule of pleading pertaining thereto ought to be observed. *Steinberg v. Saltzman,* 130 Wis. 419, 110 N. W. 198. We have carefully examined the record and find no ground for holding that the 1912 bonds are illegal.

The alleged diversion of the so-called 1906 bonds is claimed to be illegal. These bonds are denominated "Municipal electric light bonds." One hundred and fifty thousand dollars of these bonds were issued in pursuance of a vote of the electors upon the following proposition, namely, "Shall $500,000 municipal electric light bonds be issued to erect and maintain a municipal electric light plant?" Forty thousand dollars of this issue was by resolution of the common council appropriated for installing certain machinery at the refuse incinerator plant for the purpose of utilizing surplus steam which otherwise would be wasted. A careful examination of the record does not show that there was any substantial diversion of the funds, even if it be admitted that a municipal electric light plant does not include a power plant, incidental or otherwise. The plant to which the said $40,000 claimed to be diverted was applied is known as the auxiliary plant,

and is, under the proceedings of the common council, a unit of the electric light plant and to be used, in part at least, for the generation and distribution and use for the city of electric light. And in this behalf it may be observed that the answer alleges that it is the intention to use the power generated at the auxiliary plant for lighting streets, public buildings and grounds, and to use for power purposes only so much thereof as shall not be necessary for lighting, and "to charge the sewerage fund of said city with the value of the power furnished for the operation of flushing station, and to credit the lighting fund with said amount." It seems clear from the record that the purpose of the city is to use the proceeds of the 1906 bonds primarily for lighting purposes, and therefore there is no diversion of the funds. Clearly, the use of electrical current at the flushing station or auxiliary plant for power purposes when not necessary for lighting purposes cannot avail the respondent in this action. *State v. Eau Claire*, 40 Wis. 533; *Bell v. Platteville*, 71 Wis. 139, 36 N. W. 831. The use for power at the auxiliary plant, upon the record, would be incidental when not needed for lighting, and to economize otherwise wasted electrical energy.

But the real contention of respondent's counsel is, not that the fund cannot be used for power purposes, but that it cannot be used for lighting purposes.

This brings us to the real contention of respondent on this appeal, namely: first, that the city has no right to use the streets for distributing the electrical energy generated by the plant; and second, that it cannot operate a plant without a certificate of convenience and necessity from the railroad commission.

Express statutory authority is conferred upon cities to light streets, public buildings and grounds. Sec. 926—11, Stats. (1898). Having such power, it necessarily follows that it may use the streets for the accomplishment of such purpose. *Ellinwood v. Reedsburg*, 91 Wis. 131, 64 N. W. 885. Whether

the statutory authority above referred to is in any way quali-
fied by the public utility act (Laws of 1907, ch. 499) we need
not consider in this case, since we shall show later that the pub-
lic utility act does not apply to the instant case. The argument
of respondent to the effect that the streets cannot be used by
defendant city without obtaining a certificate of convenience
and necessity from the Wisconsin railroad commission, if we
understand it, seems to be based upon assumed contract rela-
tions between owners of rights under the public utility law and
the state. Counsel say in their brief: "But the point of cleav-
age clearly exists where the municipality undertakes to light
its streets, erect poles, and string wires thereon in derogation
of the contract between the state and the holder of an indeter-
minate permit within the municipality." The appellants con-
tend that a certificate of convenience and necessity is not nec-
essary, for three reasons: first, that it is not necessary where a
private corporation or municipality intends to construct a plant
and generate electricity for the purpose of supplying its corpo-
rate needs; second, that the city having commenced construc-
tion of its plant before there was in existence in said city a
plant operated under an indeterminate permit, by express pro-
vision of the statute the certificate is unnecessary; and third,
that since the passage of the public utility act the legislature
has expressly authorized the building of the plant without a
certificate of convenience and necessity. The last two propo-
sitions, we think, control this case, and the first need not be
treated. The public utility act was passed in 1907. In 1906
the defendant city issued and sold bonds for the erection and
maintenance of an electric lighting plant, bought a site for
that purpose, and subsequently to the issue of the 1906 bonds
and in 1910 the common council of the defendant city author-
ized the construction of the plant in question and caused to be
issued a second series of bonds by authority of a vote duly
taken for that purpose. Therefore, the public utility act not
having passed until July, 1907, the city, up to that time at

least, had a right to construct a plant without first obtaining a certificate of convenience and necessity, and it appears that the city had in fact expended upwards of $60,000 on such plant and incurred other indebtedness in that behalf. Clearly, under the law there was no duty resting upon the defendant city to obtain a certificate of convenience and necessity when there was no public utility, or when an existing one was operating without an indeterminate permit. Sec. 1797m— 74, subsec. 4, provides: "Nothing in this section shall be construed so as to prevent the granting of an indeterminate permit or the construction of a municipal plant where the existing public utility is operating without an indeterminate permit, as provided in this act." Moreover, we think it clear that under ch. 75, Laws of 1911 (sec. 927—19a, Stats.), no certificate of convenience and necessity was necessary. This act gives express authority to construct the plant in question without a certificate of convenience and necessity.

Ch. 75, Laws of 1911, provides:

"Whenever any bonds heretofore or hereafter issued and sold by any city, whether incorporated under general law or special act, for the construction or purchase or the erection and maintenance of an electric lighting plant, and the proceeds of which shall have been expended in whole or in part by such city in or about the construction or purchase of such plant, or of a site therefor, shall be invalid for any reason, and such city shall, by further proceedings subsequent to such issue, sale, and expenditure, have determined in the manner provided by law to issue bonds for the construction or purchase of an electric lighting plant, or for the construction of a plant for the production, transmission, delivery, and furnishing of electric light for lighting streets, public grounds, and public buildings in the said city, and for the production, transmission, delivery and furnishing power for municipal purposes, said invalid bonds theretofore issued and sold shall, if ratified by a majority vote of the members elect of the common council of such city, be legal and binding; and such city is authorized and empowered, after such ratification, to use any property acquired with the proceeds of such bonds and

any unexpended portion of such proceeds in and about the construction or purchase of an electric lighting plant for which such city shall have legally determined to issue bonds as aforesaid; provided that such invalid bonds, upon being so ratified, shall not be considered an addition to the bonds legally authorized, but as a part thereof."

The record shows that the city comes directly within the terms of ch. 75, Laws of 1911 (sec. 927—19a, Stats.), and since this law gives the right to complete the plant without any mention of certificate of convenience and necessity, it must be held that the legislature intended that none should be required.

Some reliance seems to be placed upon ch. 596, Laws of 1911, by the respondent. The constitutionality of this act is attacked by counsel for appellants. But in the view we take of the case, as heretofore indicated, we do not regard the amendment (ch. 596, Laws of 1911) applicable here, and shall not consider its constitutionality.

It follows from what has been said that the order appealed from must be reversed.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.