NEACY, Appellant, vs. CITY OF MILWAUKEE and others, Respondents.

*February 10—May 4, 1920.*

*Municipal corporations: Lighting plant for city of Milwaukee: Abandonment of project: Contracts with municipalities: Compliance with requirements of charter: Contracts involving use of patented article: Competitive bidding: Power of commissioner of public works to reject bids: Appeal: Reversal as to decision on one cause of action.*

1. In an action to enjoin the city of Milwaukee from expending corporate funds for the purchase of concrete posts for a municipal lighting plant, the evidence is *held* not to sustain the contention of plaintiff that the city had abandoned the erection of the lighting plant, or had forfeited its right to proceed with the project because its original plans may have been modified. *Neacy v. Milwaukee,* 151 Wis. 504, followed.

2. Where the commissioner of public works recommended rejection of the lowest bid and acceptance of the higher because of the incompetence of the lowest bidder, and, after the refusal of the common council to follow his recommendations, rejected all bids and drew up different specifications and let the contract to the sole bidder thereunder, the contract was void, the commissioner having no discretion, under sec. 10, ch. V, of the Milwaukee charter, to reject bids except where unreasonably high.

3. Contracts binding a municipality can be made only in the manner prescribed by the charter, and municipal officers must follow the prescribed procedure step by step.

4. The city's contract for concrete posts, which could only be manufactured by a patented process with the use of patented machines, is void, since the only manner by which the city could obtain the advantages of such patent rights was by contract for use of the patented process and machines under the city charter (sec. 23, ch. V), relating to the city's use of "patented article, process, combination or work," such charter provision having reference to every situation where, by reason of the existence of patent rights, there could be no competition in letting contracts.

5. Where the concrete posts, while not patented, could not be made except by machinery which was patented, sec. 23, ch. V, of the charter of the city of Milwaukee, providing for the acquirement of the right to the use of a patented article, must be complied with; this section of the charter being intended to exclude any other method of acquiring for the city the advantages of patented rights, articles, or processes.

6. Where the city charter required a contract for concrete posts to be let to the lowest bidder, a contract let to a manufacturer of concrete posts by patented process with the use of patented machines was void, since in such case material which did not constitute the subject of competitive bidding could not be used.

7. The supreme court, in reversing a judgment because of error committed upon one cause of action, will remand the case only as to such cause of action and not as to a cause of action upon which the judgment of the lower court was proper.

APPEAL from a judgment of the circuit court for Milwaukee county: G. N. RISJORD, Judge. *Reversed.*

Action to enjoin the city of *Milwaukee* and its officers from paying out any money on a contract between the city of *Milwaukee* and the *Universal Concrete Products Company* for the furnishing of concrete posts to be used as a part of the equipment of a municipal lighting plant. Although not pleaded as separate causes of action, two grounds for the injunction are set forth in the complaint. The complaint is therefore logically divided into two parts, which we shall refer to as the first and second cause of action.

The complaint alleges that the plaintiff is a resident and

taxpayer of the city of *Milwaukee* and brings the action for
and on behalf of himself and on behalf of all other taxpay-
ers of the city of *Milwaukee* similarly situated; that the
defendant *Fred G. Simmons* is the commissioner of public
works of the city of *Milwaukee;* that sometime during the
month of July or the first part of the month of August, 1916,
said *Fred G. Simmons,* pursuant to certain ordinances con-
cerning the construction of the street lighting system of the
city of *Milwaukee,* advertised for bids for the furnishing and
delivery of concrete posts for a portion of said street light-
ing system, according to specifications on file in the office
of said commissioner; that said bids were duly opened, and
it was found that the lowest bidder was the Badger Stucco
Works of Milwaukee, Wisconsin, whose bid was $91,750,
and that among the other bidders was the defendant
*Universal Concrete Products Company,* whose bid was
$118,750; that on the 28th day of August, 1916, the said
commissioner made a report of said bids to the council, in
which he said:

"Under the provisions of section 10 of chapter V of the
city charter and other laws applicable thereto, I beg leave to
report to your honorable body a schedule of the bids for
furnishing and delivery of concrete posts for the street
lighting distribution system which were opened August 15,
1916.   On said schedule of bids you will notice that Badger
Stucco Works is the lowest bidder as far as figures are con-
cerned, but I find upon investigation and reports made to
me by the consulting engineer and others that said Badger
Stucco Works has not presented evidence satisfactorily
showing any experience whatever in this line of work or
familiarity with the work, said concern never having manu-
factured concrete posts as required in the specifications.

"Said bidder is further unable to submit samples of the
kind of concrete posts required by the specifications within
the time designated in the specifications.   I am further in-
formed by the bidder that the bidder proposes to mold these
concrete posts, and the consulting engineers and others
advise that this process of molding posts will not produce a
post that will meet the requirements as to specifications, and

the bidder has otherwise failed to satisfy me that he will be able to deliver the concrete posts as required by the specifications within the time limited thereby.

"Wherefore I now and hereby recommend to your honorable body to accept the bid of the lowest competent and reliable bidder, to wit, *Universal Concrete Products Company,* as shown on the schedule of bids annexed hereto, and my reasons for said recommendations are as above outlined, and I ask your honorable body to direct me under the provisions of section 10 of chapter V of the charter to let the work to the above last mentioned competent and reliable bidder."

On the 1st day of September, 1916, the committee on streets and alleys of the common council considered the communication. The said commissioner, the agent of the *Universal Concrete Products Company,* and all other persons who desired to bid for said proposed contract for concrete post shafts, were present. Said commissioner requested the said committee to recommend to the council that he be authorized to award said contract to said defendant *Universal Concrete Products Company,* on the alleged ground that said company was the only bidder competent to do the work, and that others then and there declared that they were able to deliver concrete post shafts complying with the specifications drawn as aforesaid by said commissioner; that a discussion then and there arose concerning the manufacture of posts by the centrifugal process, so called, and that the persons who desired to bid, other than the agent for said *Universal Concrete Products Company,* declared that if said concrete post shafts were to be manufactured by said process they would be excluded from bidding, and that the agent for said company said, in effect, that said company, through patents, controlled exclusively the manufacture of said concrete post shafts by the centrifugal process, and that at said meeting said *Simmons* stated, in effect, that said *Universal Concrete Products Company* enjoyed the exclusive and patented right to manufacture said concrete post shafts by the centrifugal process; that he desired to

award the contract for such posts to said defendant company; and that if said committee refused to recommend to the city council that he be authorized to so award the contract, he would reject all bids and draft new plans and specifications so as to exclude from the bidding all persons, firms, and corporations except said defendant *Universal Concrete Products Company;* that said common council refused to authorize said commissioner to let said work to said defendant *Universal Concrete Products Company,* and that, nevertheless, said defendant *Simmons,* as such commissioner, in pursuance of his plans to obtain said contract for said defendant *Universal Concrete Products Company,* rejected all such bids and thereupon drew a new official notice, specifications, etc., and re-advertised for bids thereon; that the specifications so prepared, and upon which new bids were called for, excluded any and all others except the *Universal Concrete Products Company* from bidding thereon, for the reason that the said concrete posts could be manufactured only by processes known as the centrifugal process, in which certain patented machines are used, which machines and the patents thereon were owned exclusively by said company; that on September 21, 1916, bids upon said re-advertisement were opened by said commissioner, and the only bid made in response to such re-advertisement was that of the *Universal Concrete Products Company,* and a contract was awarded thereon.

The foregoing constitutes the first cause of action. Upon the trial, an objection to the introduction of any evidence under the foregoing allegations of the complaint was made in the nature of a demurrer *ore tenus,* which objection was sustained.

For the second cause of action the complaint recites various proceedings of the common council of the city of *Milwaukee* looking towards the erection of a municipal lighting plant for said city, as a foundation for the claim which is made that said city presently has no power or authority to

construct a municipal lighting plant for the reason that it has not secured a certificate of necessity from the railroad commission. This question was passed upon by this court in *Neacy v. Milwaukee,* 151 Wis. 504, 139 N. W. 409, and the proceedings of the city of *Milwaukee* in such respect up to the time of the commencement of that action may be obtained by reference to that case. That case was dismissed by order of the circuit court on October 22, 1913. The further proceedings of the common council in the matter are set forth in the findings of the circuit court, which will hereinafter appear.

The issues raised by the answers of the city and the *Universal Concrete Products Company* to the second cause of action were tried before the court. The court made findings as to what had been done on the part of the city in the matter of prosecuting its general purpose to build a municipal lighting plant, subsequent to the decision in the former *Neacy Case.* By these findings it appears that various resolutions relating to the matter were introduced in and acted upon by the common council on November 24, 1913, January 19, 1914, and on April 13, 1914, all relating to the making of a survey to determine the number, character, and location of lamps, gas and electric, needed to light the streets and public buildings of the city of *Milwaukee.* On June 8, 1914, an ordinance was passed creating the position of engineer of street lighting survey. On June 22, 1914, an engineer of street lighting was appointed and confirmed. This official then proceeded with a survey, and completed it a year later, when he made a written report recommending the construction of a lighting distribution system. The plan contemplated the construction of a complete street lighting distribution system, and it was estimated that the initial instalment of the system would take approximately two years, the plan being to install the complete lighting system for the city initially, which would light the streets imperfectly, but, by additions of power and distribution construction from

time to time, increase the lighting capacity of the system so
as to have it complete at the end of ten years.  On Septem-
ber 13, 1915, a resolution was introduced in the common
council (apparently not passed) authorizing the commis-
sioner of public works to construct a lighting distribution
system in a certain section of the city in compliance with the
recommendations of the street lighting survey.  On Sep-
tember 22, 1915, a resolution was passed by the common
council appropriating a sum of money out of the municipal
electric light fund for the purpose of installing a portion of
the distribution system of an electric light plant units for the
municipal electric light plant.  On February 1, 1916, a resolu-
tion was introduced in the common council proposing to sub-
mit to a vote of the people the proposition of whether bonds
should be issued for constructing a street lighting distribu-
tion system, which was passed on February 14th.  On April
4, 1916, a bond issue was voted at a special election, in this
form: "Shall bonds be issued for constructing a street light-
ing distribution system, same to constitute a part of the
municipal lighting plant of the city of *Milwaukee,* in the
sum of $750,000?"  In August, 1916, the commissioner of
public works advertised for bids on concrete posts for the
distribution system.  Bids were received and rejected, and
the commissioner re-advertised for bids.  On September 21,
1916, a contract was awarded to the defendant *Universal
Concrete Products Company* to furnish concrete posts.  This
is the contract assailed in this action.  An experimental
circuit was completed in 1916, and was intended as one of
the units of the whole distribution system, and so con-
structed as to be supplied with current from a generating
plant owned by the city, if one is constructed, or with cur-
rent obtained from other sources, and at the time testimony
was taken 1,500 to 2,000 lamps were installed, the current
being obtained from outside sources.  The city has been en-
gaged continuously in the installation of these units since
the report of the engineer was adopted in 1915, and has re-

tained Mr. Vaughn as supervising engineer thereof, the city having now installed fifteen to twenty per cent. of the total recommended system, the electric current being purchased from the Milwaukee Electric Railway & Light Company.

Upon these findings the court ordered judgment dismissing the complaint, and from the judgment so entered plaintiff appealed.

*Paul D. Carpenter* of Milwaukee, for the appellant.

For the respondent *City of Milwaukee* there was a brief by *Clifton Williams,* city attorney, and *Charles W. Babcock,* assistant city attorney, and oral argument by *Mr. Babcock.*

For the respondent *Universal Concrete Products Company* there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Howard T. Foulkes,* of counsel, all of Milwaukee, and oral argument by *Mr. Foulkes.*

The following opinion was filed March 9, 1920:

OWEN, J.    It must be considered as settled by *Neacy v. Milwaukee,* 151 Wis. 504, 139 N. W. 409 (which was not modified by the case of *Wis. T., L., H. & P. Co. v. Menasha,* 157 Wis. 1, 145 N. W. 231, as counsel seems to think), that at the time of that decision the city had lawful authority to construct a municipal lighting plant, and if it has not such authority at this time it is because its legal rights in the premises have been forfeited since that decision.

It is the contention of appellant's attorney that the city has abandoned the building of the plant, or that, if it has not abandoned the project entirely, it has deviated in its present plans from the original proposition to such an extent as to be tantamount to an abandonment of it.  The record discloses that the matter was taken up with promptness by the city council immediately after the former *Neacy Case* had been dismissed, and that from that time down to the commencement of this action the council was rather attentive to the project.  An entire year was given up to the making of a survey with a view of determining the needs and neces-

sities of the city and the best method to pursue in the construction of the plant. There is no statute of limitations the running of which will bar the right of the city to continue further with the project. The actions of the common council referred to in the statement of facts certainly negative the idea that the project has been abandoned by the city. Neither do we see anything to the argument that the city has forfeited its rights to build the lighting plant because its original plans may have been modified or changed. Our conclusion is that the rights of the city, on the facts presented by this record, are controlled by the decision in the former *Neacy Case,* and that the judgment of the trial court upon this branch of the case should be affirmed.

We find more difficulty in agreeing with the disposition made by the trial court of the first cause of action set forth in the complaint. It seems that in obedience to certain ordinances of the city of *Milwaukee* the commissioner of public works prescribed specifications and called for bids for the furnishing of a quantity of concrete posts to be used as a part of the construction of the municipal lighting plant; that in response to the advertisement a number of bids were received. Upon the coming in and opening of those bids, the further power and authority of the commissioner was as is prescribed in sec. 10, ch. V, of the city charter (ch. 144, Laws 1875; ch. 324, Laws 1882; and ch. 388, Laws 1889). That section, so far as material here, provides:

"All contracts shall be awarded to the lowest bidder, who shall have complied with the foregoing requisitions. . . . And provided, further, that whenever the lowest bid for any work to be let by said commissioner, shall appear to said commissioner to be unreasonably high, the said commissioner is authorized to reject all bids therefor, and to relet the work anew, and whenever any bidder shall be, in the judgment of said commissioner, incompetent, or otherwise unreliable for the performance of the work for which he bids, the said commissioner shall report to the common council of said city a schedule of all the bids for such work, with

a recommendation to accept the bid of the lowest competent and reliable bidder for such work, with his reasons for such recommendation, and thereupon it shall be lawful for the said common council to direct said commissioner either to let the work to such lowest competent and reliable bidder, or to relet the same anew."

The only discretion vested in the commissioner is to reject all bids when the lowest bid shall appear to said commissioner to be unreasonably high. Whenever any bidder shall be, in the judgment of the commissioner, incompetent or otherwise unreliable for the performance of the work for which he bids, he must report the matter to the common council with a recommendation to accept the bid of the lowest competent and reliable bidder for the work, and thereupon it shall be lawful for the common council to direct said commissioner either to let the work to such lowest competent and reliable bidder or to relet the same anew. In this instance the commissioner reported the matter to the common council with a recommendation that the work be let to the one he considered the lowest reliable bidder, but who was not in fact the lowest bidder. He did not in the first instance exercise the discretion vested in him of rejecting all bids because the lowest bid was unreasonably high, and his action in recommending that the work be let to a higher bidder is conclusive that he did not then consider the lowest bid unreasonably high. It was only when the common council refused to authorize him to let the work to the bidder he recommended that he assumed to reject all bids. We have been referred to no provision of the city charter conferring authority upon the commissioner to reject all bids under such circumstances. His power is to reject bids only when the lowest bid is unreasonably high in his judgment. That such was not the case here is evidenced by the fact that he recommended that the work be let to one who was not the lowest bidder. When the matter was passed to the common council, his authority and duty in the premises

Neacy v. Milwaukee, 171 Wis. 311.

terminated. The power to reject the lowest bid and award the contract to a higher bidder, if not exercised firmly, wisely, and honestly, may easily lead to favoritism and corruption, and result in improvidence which it was intended to prevent. Because of the great responsibility attending its exercise, the power was placed with the supreme governing body of the city. It was not intended that the exercise of this responsible power by the common council could be arbitrarily nullified by the commissioner of public works in the manner here attempted. His conduct was an unauthorized assumption, if not clear usurpation, of power. It is well settled that contracts binding a municipality can be culminated only in the manner prescribed by the charter, and municipal officers must follow the prescribed procedure step by step. *Ricketson v. Milwaukee,* 105 Wis. 591, 81 N. W. 864; *Chippewa B. Co. v. Durand,* 122 Wis. 85, 99 N. W. 603; *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099; *Cawker v. Milwaukee,* 133 Wis. 35, 113 N. W. 417. When the commissioner referred the bids submitted in response to the first advertisement, to the city council, his only authority was to await and execute the directions of the common council. His re-advertisement was without authority, and the contract executed pursuant thereto was void.

We also think the contract was void because the posts called for by the second set of specifications are protected by patents. Sec. 23, ch. V, of the city charter provides:

"The said commissioner shall have power, under the authority of the common council, to make a contract or contracts with the patentee or his licensees or assigns, to use any patent or patented article, process, combination or work for the said city, at a stipulated sum or royalty for the use thereof. And thereupon the said commissioner shall have power to order any work, whether chargeable to the said city or to lots, parts of lots or parcels of land therein, to be done with the use of such patent or patented article, process, combination or work; and whenever the owner or agent of

any lot, part of lot or parcel of land in said city, or other person authorized by law to do such work, shall do the same and.use any such patent or patented article, process, combination or work in doing the same, he shall pay to the said city the sum or royalty chargeable therefor by such patentee, his licensees or assigns, to the city under such contract, and shall be liable to suit by the said city therefor; or the amount of such sum or royalty may be charged as a special assessment upon the respective lots, parts of lots, and parcels of land in front of which such patent was so used, and collected for the use of said city, as other special taxes are collected."

In *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099, it was held that this provision of the charter was intended to exclude any other method of acquiring for the city the advantages of patented rights, articles, or processes for any purpose. That the charter provision above quoted was not complied with in this instance is alleged in the complaint, and the contract here is void for that reason if the posts called for by the specifications are comprehended within the terms "patented article, process, combination or work," within the meaning of this charter provision. It is conceded that the post itself is not patented, but it is alleged that a post responding to the specifications cannot be made except by the centrifugal process, and that to successfully manufacture a post under that process it is necessary to use patented machines the patent to which as well as the machines themselves are owned exclusively by the *Universal Concrete Products Company.* While it may be conceded that the exact language does not include the posts here in question, as they constitute neither a "patented article, process, combination or work," we nevertheless think that the legislative intent is very clear. These posts are protected by a patent just as effectually as though the post itself were patented. The phrase employed in the statute is sweeping, and is no doubt intended to cover any product which is not the subject of competition by reason of the protection of patents in any manner, shape, or form. From the

broad and comprehensive phrase "patented article, process, combination or work," we conclude that the legislature intended to include every situation where, by reason of the existence of patent rights, there could be no competition. We so construe the statute.

But, independent of this charter provision, the same conclusion is necessarily reached by the application of a rule of law well established in this state to the effect that, where a city charter requires public work to be let upon competitive bids, material which does not constitute the subject of competitive bidding cannot be used. *Dean v. Charlton,* 23 Wis. 590. The principle of this case was somewhat limited in *Kilvington v. Superior,* 83 Wis. 222, 53 N. W. 487, where it was held that the principle did not affect such general city powers as lighting streets, purchase of a fire-engine, or the destruction of garbage, etc., which are generally and broadly conferred by other clauses of the charter as to which the requirement of competitive bidding is construed as merely regulative and not to require competitive bidding to apply where it cannot. See, also, *Allen v. Milwaukee, supra,* where the decision in *Kilvington v. Superior, supra,* is explained. Manifestly, the situation here does not fall within the principle of *Kilvington v. Superior,* because it conclusively appears that the general product of concrete posts does constitute a subject of competitive bidding. It is only the special concrete posts called for by the second set of specifications, which can be produced but by a single concern, that is not the subject of competitive bidding. It must not be thought that because, in all the cases dealing with this principle, the question arose by reason of the attempted use of a patented article, the principle does not apply unless the article is patented. The underlying consideration is that any article which is not a subject of competitive bidding is obnoxious to the provisions of city charters requiring that all contracts should be let pursuant to competitive bidding. As a rule, a patented article is not the

subject of competitive bidding. If, however, the article, for any other reason, is not the subject of competitive bidding, its use is just as obnoxious to charter provisions requiring competitive bidding. So, fundamentally, it makes no difference here whether or not this post is a patented article. It appears from the allegations of the complaint that it is not a subject of competitive bidding, and its use is prohibited by that provision of the city charter (sec. 10, ch. V) which provides that "all contracts shall be awarded to the lowest bidder." If it be a patented article, it may be obtained for the use of the city in the manner prescribed by sec. 23, ch. V, of the charter, above quoted. If it be not a patented article, then it would seem that its use is prohibited. But we have held that it is a patented article within the meaning of sec. 23, and that it may be procured for the use of the city in the manner provided therein. The provisions of sec. 23 having been ignored in the letting of the contract here under consideration, the contract is for that reason void under *Allen v. Milwaukee* and *Cawker v. Milwaukee, supra.*

While the judgment in this case must be reversed, it is not necessary that a retrial be had upon the second cause of action, so called, as the judgment of the court upon that branch of the case was proper. It will be sufficient to reverse the judgment and remand the case with instructions to take evidence upon those allegations of the complaint which we have indicated render the contract void, if true.

*By the Court.*—Judgment reversed, and cause remanded with instructions to take further evidence in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on May 4, 1920.