NEACY, Appellant, vs. DREW, City Treasurer, and others, Respondents.

*January 14—March 14, 1922.*

*Municipal corporations: Cities of the first class: Special legislation: Validation of unlawful contracts: Taxpayer's action to recover moneys paid: Laches: Performance of contract while action pending: Pleading: Demurrer.*

1. Sec. 925—91*a*, Stats. (sec. 1, ch. 10, Laws 1920, Spec. Sess.), validating any contract for the purchase of concrete posts in connection with a municipal lighting system of any city of the first class, applied only to the city of Milwaukee, and could never apply to any other city, and was in violation of secs. 31, 32, art. IV, Const., as special legislation.

2. Sec. 959*w*, Stats. 1919, providing for the ratification, validation, and confirmation of contracts which the common council of a city had authority to make, does not permit the ratification of any part of a contract void because the furnishing of the article provided for under it involved its manufacture by patented process, in respect to which the provisions of the city charter had not been complied with.

3. Upon demurrer it must be assumed that the allegations in a complaint are true.

4. When a taxpayer brings an action to restrain the performance of an alleged unlawful contract entered into by city officials, and pending the determination of the action the contract is performed, moneys expended by the city under such contract may be recovered if the court of last resort decides it to be invalid.

5. The bringing of such an action is favored in law and equity; and the complaint is not subject to demurrer as improperly joining two causes of action, in that it prayed that attorney's fees be paid out of the fund sought to be recovered.

6. A corporation entering into a contract with a city to furnish an article capable of being manufactured only by patented machines, in violation of the charter of the city and with full knowledge of the invalidity of the contract, was in no position to invoke the doctrines of equity in an action by a taxpayer in behalf of the city to recover money illegally paid to it under the contract.

7. Money illegally paid by officials of a city under such a contract could be recovered not only from the company receiving it, but also from the officials responsible for the illegal payment.

APPEAL from an order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

The appeal is from an order sustaining the demurrer of the defendant *Universal Concrete Products Company* to the complaint.

For the appellant there were briefs by *Paul D. Carpenter,* attorney, and *Timlin & Dean,* of counsel, all of Milwaukee, and oral argument by *William H. Timlin.*

For the respondent *Universal Concrete Products Company* there was a brief by *Quarles, Spence & Quarles,* attorneys, and *J. V. Quarles,* of counsel, all of Milwaukee, and oral argument by *J. V. Quarles.*

For the respondent *Drew* and others there was a brief by *John M. Niven,* city attorney, and *C. W. Babcock,* assistant city attorney, and oral argument by *Mr. Babcock.*

DOERFLER, J.    The action is one brought by the plaintiff as a resident and taxpayer of the city of *Milwaukee,* on his own behalf and on behalf of all others similarly situated, to recover from the defendants, for the benefit of said city, the sum of $155,204.62, with interest, such sum representing the amount paid by the city of *Milwaukee,* through its officers, to the defendant *Universal Concrete Products Company* on a certain contract entered into between said city of *Milwaukee* and said *Products Company,* which contract is alleged in the complaint as being void for reasons therein specified.

The defendant *Products Company* demurred to the complaint, first, upon the ground that the same does not state facts sufficient to constitute a cause of action, and second, that two causes of action have been improperly united, the second ground for the demurrer being based upon the prayer for relief in the complaint that attorneys' fees be allowed and paid to the plaintiff out of the fund recovered.

On May 4, 1920, a decision of this court was handed down in *Neacy v. Milwaukee*, 171 Wis. 311, 176 N. W. 871, that action being based upon substantially the same facts and allegations as are contained in the present action, with the exception that other parties have been added as defendants in this action, and that the relief prayed for in the reported case was for an injunction restraining the defendant city and its officers from paying out any of the city's moneys on the contract therein referred to, for the reason that the contract was void and was illegally let, while in the instant action judgment is prayed for, for the benefit of the city of *Milwaukee*, for a recovery of all moneys paid out by the city of *Milwaukee* on such illegal contract, with interest, etc. In the reported case referred to, it was in substance held by this court that the alleged contract therein referred to was void because, first, in the letting of said contract the commissioner of public works exceeded his authority because such commissioner exercised power which properly vested in the common council of said city; second, because the contract as let violated the charter of the city of Milwaukee, in that the article to be furnished under the provisions of the contract was an article capable of being manufactured only by patented machines, and because the provisions of sec. 23, ch. V, of the city charter were not complied with; and third, because in the letting of said contract there was no competition, as is required by the provisions of said city charter.

The action in the reported case was commenced on the 6th day of April, 1917, and, a temporary restraining order having been issued, such order was by the circuit court, on June 11, 1917, vacated. The action having come on for trial before the circuit court in the fall of 1918, judgment was entered on December 4th of that year dismissing plaintiff's complaint, with costs, and an appeal was thereupon taken from such judgment to this court, which appeal was

placed upon the August, 1919, calendar of this court and heard and determined as hereinbefore stated.

Shortly after the decision in the case reported in 171 Wis., *supra,* at a special session of the legislature ch. 10 of the Laws of 1920 was passed, which act is as follows:

"An act to create section 925—91*a* of the statutes, validating certain contracts.

*"The people of the state of Wisconsin, represented in Senate and Assembly, do enact as follows:*

"Section 1. There is added to the statutes a new section to read: Section 925—91*a*. Any contract for the purchase of concrete posts or poles in connection with the municipal lighting system of any city of the first class, however incorporated, which has been entered into prior to September 23, 1916, upon which payments have been made and satisfactory material delivered, and such posts or poles are made by machine covered by patent, which contract has, prior to the first day of May, 1920, been declared invalid due to failure of any such city or its officers to comply with sections 925—90 to 925—91 of the statutes, inclusive, or provisions of the special charter of any such city relating thereto, shall be and hereby is made valid; and all payments previously made thereunder or thereafter to be made thereunder are declared valid and binding on any such city and its officers, any provisions of the charter of any such city or of the statutes notwithstanding.

"Section 2. This act shall take effect upon passage and publication."

Immediately after the passage of said legislative act the defendants received notice that the plaintiff considered said act unconstitutional and that he would challenge the constitutionality of such act, and thereupon the said city, with the consent of the defendant company, canceled the unfinished portion of the contract.

On the part of the plaintiff it is contended that the above curative act is unconstitutional because at all times mentioned in the complaint the city of *Milwaukee* was and is the

only city of the first class in the state of Wisconsin, and because the act applies only to the city of *Milwaukee,* and can never apply to any other city, and that it therefore violates secs. 31 and 32 of art. IV of the constitution of the state. The constitutional issue raised with respect to ch. 10 aforesaid has been repeatedly before this court in cases involving legislative acts similar to ch. 10 aforesaid, and it has been uniformly held that such legislation is unconstitutional and violative of the constitutional provisions above referred to because it is special legislation. *Johnson v. Milwaukee,* 88 Wis. 383, 386, 60 N. W. 270; *Boyd v. Milwaukee,* 92 Wis. 456, 465, 66 N. W. 603; *Cawker v. Central B. P. Co.* 140 Wis. 25, 121 N. W. 888.

In *Cawker v. Central B. P. Co., supra,* the constitutionality of ch. 677, Laws of 1907, an alleged curative statute and similar in all respects to ch. 10, *supra,* was challenged. The act involved, among other things, provided:

"In all cases where any municipal corporation of the first class in this state shall have heretofore entered into any contract or contracts with any person, firm or corporation for the construction of any pavement or pavements, which contract or contracts are illegal because requiring the use of patented materials in whole or in part," etc. (The balance of the act contains the curative portion thereof, similar in all respects to ch. 10, above referred to.)

In the decision of the court, Mr. Justice TIMLIN writing the opinion says:

"The constitution of this state (art. IV, secs. 31, 32) forbids the enactment of any special law to amend the charter of a city, and requires the legislature to provide general laws for 'the transaction of any business' thus prohibited, and requires that such general laws be uniform in their operation throughout the state. . . . Milwaukee is the only city which now is, or which ever in the past has been, in this first class according to legislative classification by population. The act, relating wholly to past conditions, is therefore special, as much so as if the city of Milwaukee were

Neacy v. Drew, 176 Wis. 348.

expressly named therein. *Boyd v. Milwaukee,* 92 Wis. 456, 66 N. W. 603. . . . We must hold that the curative statute in question is unconstitutional and void."

Ch. 10, therefore, under the decisions aforesaid, clearly violates the constitutional provisions above referred to, and we therefore hold such statute unconstitutional and void.

Counsel for the *Products Company,* in its brief, contend that, inasmuch as the common council by resolution canceled the contract with the *Products Company* after it had received notice that this court had held it invalid, by such cancellation it ratified the contract up to the time of the cancellation, and that the council had ample authority to ratify such contract pursuant to the provisions of sec. 959$w$, Stats. 1919, which reads as follows:

"The common council of any city, however incorporated, is authorized and empowered to ratify, validate and confirm by a majority vote of the members thereof, any contract, either written or oral, heretofore entered into or purported to be entered into by any officer or department of such city in the forming of which the proper proceedings may not have been regularly taken; provided, that the other contracting party has performed his share of said contract; and that such contract was one which the common council had authority to authorize; and the common council of any such city is authorized and empowered to ratify, validate and confirm all proceedings in relation thereto, and when so ratified and confirmed the obligation of such contract shall be as binding to all intents and purposes as if such contract had been regularly entered into."

Assuming that said sec. 959$w$, Stats. 1919, is in all respects a valid statute, it has no application to the issues involved in this action for the reason that such statute provides for a ratification, validation, and confirmation of contracts which the common council had authority to make and which contracts may be void for lack of certain proper proceedings.

In *Neacy v. Milwaukee,* 171 Wis. 311, 176 N. W. 871, the contract involved in this case, among other things, was

held void because the furnishing of the article provided for under the contract involved the manufacture of the article by patented process, and because the provisions of the charter in that behalf had not been complied with. In other words, the common council has no authority to let a contract for the furnishing of a patented article or one manufactured by and which can be made only by the use of a patented machine, unless the specified provisions of the charter in that regard are expressly complied with. Such provisions of the charter are merely amplifications and declaratory of the common law, and are designed to induce competition so as to enable a municipality not only to obtain the benefit of the articles to be furnished at the lowest possible cost, but to prevent favoritism and graft. If the council had no authority in the first instance to let the contract because it violated the provisions with respect to patented articles and processes, then it had no authority to ratify a contract entered into in violation of such provisions, and any holding to the contrary would simply annul and emasculate the beneficent design of the law and of the legislature, intended to protect the public interests. The failure to comply with the statute with respect to the patented article or process is not, as is contemplated by sec. 959w, Stats. 1919, a mere irregularity which is curable by subsequent ratification, but is a fundamental defect not reachable by such curative act.

We therefore hold that sec. 959w cannot and does not cure the omission in the proceedings resulting in the contract in question, and that such contract is void, in accordance with the decision of this court in *Neacy v. Milwaukee,* 171 Wis. 311, 176 N. W. 871.

Counsel for the defendant company in their brief further raised this question: "Can the money paid by the city in good faith for the lighting posts which the *Concrete Company* has delivered over a period of five years be recovered from the *Concrete Company* and the city officials?"

Contracts entered into by private individuals of a nature similar to the one under consideration, and where the full price has been paid and the articles delivered, stand in an entirely different category from a contract entered into by a municipal corporation. As is said in *Frederick v. Douglas Co.* 96 Wis. 411, 423, 71 N. W. 798:

"There are many cases which hold that, as between man and man, money paid voluntarily, with knowledge of all the facts, and without fraud or duress, cannot be recovered merely on account of ignorance or mistake of the law. . . . This is simply the doctrine of voluntary payment. It is frequently applied to the payment of illegal taxes. It is founded upon the general principle that a man may do what he will with his own. He may give it away, or buy his peace; and, if he does so with knowledge of the facts, he is generally remediless."

Public officers, however, are not dealing with their own property but with the property of the public. They are trustees of the public moneys and property, and are not only obliged to act in entire good faith, but are surrounded by certain legal restrictions which in the exercise of their official duties they are obliged to heed, and which if violated may result disastrously to them. As trustees of public property their acts are subject to close scrutiny. To hold that a public official can exceed his corporate powers in the letting of a contract, or in so doing be guilty of acts of favoritism to others, or of graft, to the great detriment of the official body that he represents, and that he may be screened or protected from liability because his unlawful act has been executed and the moneys expended, would constitute a dangerous and demoralizing doctrine, resulting in disaster to the proper administration of public affairs. Such holding, as is said in the *Frederick Case* aforesaid, would be "to introduce a vicious principle into municipal law, and a principle which would necessarily sweep away many of the safeguards now surrounding the administration of public affairs. Were this, in fact, the law, it can

readily be seen that public officials could at all times, with a little ingenuity, subvert and nullify that wholesome principle of the law which prohibits their spending the public funds for illegal purposes. . . . We cannot approve of such a doctrine."

Defendants' counsel to a large extent rely upon the decision in the *Frederick Case* above referred to. In that case a large sum of money, in excess of $2,000, was illegally paid out by Douglas county to an attorney named Grace for assisting the district attorney in conducting certain extensive and necessary tax litigation. Mr. Grace was employed in January, 1895, and rendered valuable services for the county until the fall of the year. It was a matter of public notoriety in Douglas county that Grace had been so employed and that he was devoting his valuable time in the interests of the county for the purpose of performing the services for which he was hired. Not until November of the same year was the legality of such hiring, or the payment of money on account thereof, challenged by an action brought by Frederick as a taxpayer, for the benefit of the county, to recover the moneys illegally expended and to restrain the county from making any further payments. In its decision in that case this court says:

"Could it, under any view of the circumstances, be said to be equitable to compel Mr. Grace to pay back the money which he received for long and valuable labors, rendered honestly and in good faith, the benefit of which the corporation has received, and *concerning which the taxpayers of Superior were, or ought to have been, fully informed during their entire progress?*"

From the foregoing quotation the *Frederick Case* can readily be distinguished from the instant case. Shortly after the letting of the illegal contract to the *Concrete Company* the plaintiff herein brought an action based upon the illegality of such contract, and in which he prayed for an injunction restraining the city from paying out any of its

moneys on account thereof. The action did not come on for trial until the fall of the year 1917, and in fact was not decided until December, 1918. The city had every opportunity to press that action for trial, for the reason that it involved a vital matter of public interest, and we are safe in saying that the trial of the action would have been advanced if application therefor had been made by the city. We are also of the opinion that the plaintiff was not guilty of any laches in taking his appeal to this court upon the filing of the decision in the circuit court. In bringing his action for an injunction plaintiff sharply challenged the illegality of the contract involved, and, in the exercise of the proper precaution devolving upon public officials in a matter of this kind, the letting of the contract and the execution thereof should have awaited the final outcome of the litigation in this court. True, the circuit court sustained the contention of the defendants; but such court is not one of last resort. Shortly after the rendition of the decision in the lower court the appeal was taken to this court. When the decision was rendered by this court as reported in 171 Wis. 311, 176 N. W. 871, the cause was remanded to the circuit court and now rests there undetermined. Thereafter the action in the instant case was begun for the purpose of recovering back the moneys alleged to have been illegally paid out by the city through its officials. While the plaintiff, in the action for an injunction, did not pray for a recovery of moneys illegally paid, the complaint in such action was at all times subject to be amended, up to and during the time of the trial of the action.

The situation, therefore, presented in the instant case differs materially from that presented in the case of *Frederick v. Douglas Co., supra,* and a careful reading of the opinion in the latter case will reveal the fact that the very element missing in the *Frederick Case* has been supplied in the instant case, and that if the validity of the contract of the county with Grace had been timely and properly chal-

lenged, the ultimate decision in the *Frederick Case* would have been favorable to the plaintiff therein.

At all times referred to in the complaint, the decision of this court in *Chippewa B. Co. v. Durand,* 122 Wis. 85, 99 N. W. 603, constituted the law in this state with reference to a situation such as is presented in the instant case.  In the *Chippewa Case* this court uses this language:

"We do not perceive how what was done by the parties after the commencement of the action, whereby they will suffer loss if appellant succeeds, should have any weight in the matter.  Certainly, they took their chances, in proceeding after being admonished by the commencement of the suit that the validity of their contracts would be judicially investigated.  Sometimes laches on the part of a taxpayer in commencing an action of this sort materially affects the quantum or character of the relief which equity will afford him, as was the case in *Frederick v. Douglas Co., supra;* but the action having been seasonably commenced for all purposes, the defendants cannot, as a rule, reasonably expect to obtain any great or lasting advantage by accomplishing in the interim between such commencement and the final adjudication of the rights of the parties the thing sought to be prevented.  They may proceed, there being no provisional remedy to prevent it, so as to preclude preventive relief of an effective character at the close of the litigation, laying themselves liable, however, to restore the public money obtained by them, and to recoup their loss, so far as practicable, by such lawful means as may be open to them."

The decision in the *Chippewa B. Co. Case* applies in all its force to the instant case.  The temporary injunction was dissolved, but the case still continued, and the challenge of the legality of the contract continued until the final disposition of the cause.  The defendant city and its officers, together with the *Products Company,* could therefore proceed with the execution of the contract, which they did; but in doing so they proceeded at their peril, and they are not now in a position to complain when it has been held not only that their contract was illegal, but that the curative act

known as ch. 10, aforesaid, is declared unconstitutional and void.

Whether or not the contract with the *Products Company* was let in good faith is a subject concerning which, to say the least, there may be considerable doubt and difference of opinion. The complaint, properly construed, charges bad faith. Upon demurrer it must be assumed that the allegations contained in the complaint are true. Under the decision in *Neacy v. Milwaukee,* 171 Wis. 311, 176 N. W. 871, it was held that the commissioner of public works acted without authority in setting aside all bids when he did so, and, notwithstanding such act of the commissioner was in direct violation of the charter provisions of the city of *Milwaukee,* the common council failed to take any action with respect to such violation. When the specifications thereafter for the construction of the lighting posts were prepared by the commissioner of public works, he by such specifications clearly attempted to accomplish indirectly, with respect to the use of an article manufactured by a patented machine, that which he clearly could not do if the specifications had specially provided for an article to be manufactured by a patented machine. By taking the course chosen by him, he clearly evinced an intention to accomplish his purpose despite the provisions of the organic law of the city. A contract under these circumstances was let to the *Products Company* without protest and with the approval of the council and the city officials. The illegality referred to was sharply challenged by the plaintiff's action for an injunction, but the warning thereby given remained unheeded. The illegal contract invited by the city and its officials was stubbornly executed, and the moneys of the city paid to the company by the trusted city officials. Bad faith is therefore properly alleged in the complaint.

The plaintiff in this action cannot possibly gain any personal advantage from the final success achieved. He appears as a taxpayer for the benefit of taxpayers. If the whole

amount of money paid out under the contract is repaid to the city of *Milwaukee,* the proportionate amount which would inure to his benefit would be an insignificant trifle. Similar actions are favored in the law and by courts of equity because they are designed to secure to public corporations their proper rights and to protect them from illegal acts. An action of this nature by a taxpayer, begun in good faith, is stamped not only with a desire highly equitable in its nature, designed to promote the public welfare, but is indicative of an altruistic motive, redounding to the credit of the person resorting thereto; for it can readily be seen that such actions involve not only a sacrifice of material means, but oftentimes hold the moving party up to public criticism and censure. To commence and prosecute such an action in good faith requires not only moral courage but a high degree of civic interest and pride. Therefore we say that if litigation is at all favored by the courts, it is in an action of this nature brought by a private citizen for a public interest.

The *Products Company,* it must be assumed, entered into this contract with full knowledge, and thereby aided and abetted the illegal acts of the city officials. Therefore, it is in no position to invoke the doctrines of equity.

The money, therefore, illegally paid may not only be recovered from the *Products Company* but also from the officials responsible for the illegal payment. *Wilcox v. Porth,* 154 Wis. 422, 143 N. W. 165.

The objection taken by demurrer, that two causes of action in the complaint are improperly joined, is not deserving of extended consideration. The fact that the plaintiff in his prayer for relief prayed for the payment of attorneys' fees to be paid out of the fund is not a proper subject for demurrer. *Moritz v. Splitt,* 55 Wis. 441, 13 N. W. 555; *Hawley v Tesch,* 72 Wis. 299, 39 N. W. 483.

The order of the circuit court is therefore reversed, with

directions to the lower court to overrule the demurrer, with the privilege to the respondent to interpose an answer upon such terms as the lower court may direct.

*By the Court.*—Order reversed.