WISCONSIN CENTRAL RAILWAY COMPANY and others, Appellants, vs. CITY OF SUPERIOR and another, Respondents.

*January 30—February 18, 1913.*

*Constitutional law: Classification of cities: Laws applicable to one class: Validity: Street improvements: Special assessments.*

1. Laws applicable to a single class of cities are "general laws" and "uniform in their operation throughout the state," within the meaning of sec. 32, art. IV, Const.; and it is immaterial that there is but one city falling within the class legislated for.

2. Such a law relating to one of the existing classes of cities need not itself make a legitimate classification. In enacting it the

legislature must determine that it is proper and appropriate for the class affected; but neither the legislature nor the courts need pass upon the question whether other classes might not with equal propriety be included. Language used in *Smith v. Burlington,* 129 Wis. 336, so far as it conflicts herewith, disapproved.

3. Ch. 575, Laws of 1911 (sec. 959—35*a*, Stats.), relating to special assessments for street improvements and taking away all exemptions in cities of the second class, thus imposing upon property owners in such cities burdens more onerous than those imposed in cities of other classes, is valid, though it is apparent that no substantial reason exists for making the burdens greater in the one case than in some of the others.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. Ross, Circuit Judge. *Affirmed.*

For the appellants there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.* They cited, among other cases, *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954; *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869; *Weise v. Green Bay,* 143 Wis. 198, 126 N. W. 681; *Boyd v. Milwaukee,* 92 Wis. 456, 66 N. W. 603; *Burnham v. Milwaukee,* 98 Wis. 128, 73 N. W. 1018; *Smith v. Burlington,* 129 Wis. 336, 109 N. W. 79; *State v. Evans,* 130 Wis. 381, 110 N. W. 241; *Bingham v. Milwaukee Co.* 127 Wis. 344, 106 N. W. 1071; *Black v. State,* 113 Wis. 205, 89 N. W. 522; *Lawrence University v. Outagamie Co.* 150 Wis. 244, 136 N. W. 619; *Battles v. Doll,* 113 Wis. 357, 89 N. W. 187; *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468; *Maercker v. Milwaukee,* 151 Wis. 324, 139 N. W. 199; *Julien v. Model B., L. & I. Asso.* 116 Wis. 79, 92 N. W. 561; *State ex rel. Sanderson v. Mann,* 76 Wis. 469, 45 N. W. 526; *Warner v. Knox,* 50 Wis. 429, 7 N. W. 372; *State ex rel. Richards v. Hammer,* 42 N. J. Law, 435; *State ex rel. Douglas v. Ritt,* 76 Minn. 531, 79 N. W. 535; *Philadelphia v. Westminster C. Co.* 162 Pa. St. 105, 29 Atl. 349; *Wanser v. Hoos,* 60 N. J. Law, 482, 38 Atl. 449; *State ex rel. Lane v. Otis,* 68 N.

J. Law, 64, 52 Atl. 305; *Gaylord v. Hubbard,* 56 Ohio St. 25, 46 N. E. 66; *Pasadena v. Stimson,* 91 Cal. 238, 27 Pac. 604; *In re Pittsburgh,* 138 Pa. St. 401, 21 Atl. 757, 759; *Lodi v. State,* 51 N. J. Law,.402, 18 Atl. 749; *L'Hote v. Milford,* 212 Ill. 418, 72 N. E. 399; *State ex rel. Mueller v. Thompson,* 149 Wis. 488, 137 N. W. 20; *In re Passaic,* 54 N. J. Law, 156, 23 Atl. 517; *Angell v. Cass Co.* 11 N. Dak. 265, 91 N. W. 72; *Lowry v. Scott,* 110 Minn. 98, 124 N. W. 635; *People ex rel. Stuckart v. Knopf,* 183 Ill. 410, 56 N. E. 155; *Knopf v. People ex rel. Chicago,* 185 Ill. 20, 57 N. E. 22.

On behalf of parties, in pending litigation, having the same right as appellants, there was a brief by *Hanitch & Hartley, amici curiæ,* and oral argument by *Louis Hanitch.*

For the respondent *City of Superior* there was a brief by *H. V. Gard* and *T. L. McIntosh,* and oral argument by *Mr. Gard.*

For the respondent *White Construction Company* there were briefs by *Grace, Hudnall & Fridley,* attorneys, and *Frank M. Hoyt,* of counsel, and oral argument by *Mr. C. R. Fridley* and *Mr. Hoyt.*

BARNES, J.     The plaintiffs in this case are property owners in the city of *Superior.* Each appealed to the circuit court from the determination of the city council assessing its or his property, as the case might be, for the pavement of Tower avenue in said city with a permanent pavement on a concrete foundation. The various appeals were consolidated and tried as one action in the circuit court on an agreed state of facts. The circuit court held the assessment valid, and from a judgment entered in accordance with such decision plaintiffs appeal to this court. The plaintiffs insist that ch. 575 of the Laws of 1911 (sec. 959—35a, Stats.), under which the city council acted in making the assessment, is void. This statute took away all exemptions in cities of the

second class and permitted an assessment for the entire cost of a pavement to the full extent of the benefits conferred against abutting property.

The legislation dealing with the matter of imposing special assessments on property for street improvements is contained in ch. 310, Laws of 1893; ch. 329, Laws of 1909; ch. 185, Laws of 1911; and ch. 575, Laws of 1911. Ch. 310 of the Laws of 1893, with some slight changes, appears as secs. 959— 30 to 959—35 in the revision of 1898.

After the passage of ch. 185, Laws of 1911, the owners of property in cities of the first class could not be required to pay for the pavement of the street in front of their property with a permanent pavement having a concrete foundation to exceed $3 per square yard for this and former pavements plus one half the cost of such new pavement in excess of $3 per square yard. The same was true of cities of the second class. In cities of the third class there was a full exemption after the three-dollar limit was reached. Counsel are not agreed as to the status of cities of the fourth class, counsel for appellants claiming that there was an exemption above $2 per square yard and counsel for respondents claiming that there was no exemption whatever. It is immaterial to the disposition of this case which is right in this respect.

By ch. 575, Laws of 1911, all exemption was taken away in cities of the second class. After it was passed there was an exemption of one half the cost in excess of $3 per square yard in cities of the first class, no exemption in cities of the second class, and full exemption above $3 per square yard in cities of the third class. The city of Milwaukee is the only city in the state of the first class and the city of *Superior* is the only one of the second class.

Counsel for appellants insist that ch. 575, Laws of 1911, must be sustained, if at all, on the ground that a legitimate classification of cities was thereby made; that the classification is in fact indefensible; and that the act is void because it

violates sub. 9 of sec. 31 and sec. 32 of art. IV of our state constitution.

Said sub. 9 inhibits the passage of special or private laws for incorporating any city, town, or village or to amend the charter thereof, and sec. 32 commands the legislature to provide general laws for the transaction of any business prohibited by sec. 31, and provides that "all such laws shall be uniform in their operation throughout the state."

It was not until 1892 that the aforesaid sub. 9 was amended so as to include cities. Prior to 1889 cities were incorporated by special act and their charters were amended in the same way. In 1889 the first general charter law was passed, being ch. 326 of the laws of that year. By this act cities were divided into three general classes. This act was revised by ch. 312, Laws of 1893, which divided cities into four classes. This act has often been held to be valid. Neither of these acts required cities already existing under special charters to surrender such charters and come in under the general charter law.

Before the passage of the constitutional amendment referred to, the legislature might within constitutional lines grant and amend city charters, and it was within the field of legislative discretion to permit one city to make special assessments for street improvements to the extent of benefits conferred, without conferring a like power on other cities, where there was a substantial difference in population or in other respects.

The concrete question presently before the court is this: Can the legislature single out cities of one class and impose burdens on property owners for street improvements that are more onerous than those imposed on other classes of cities, where it is apparent that no substantial reason exists for making the burdens greater in the one case than in some of the others, it being of course conceded that the burdens imposed do not exceed the benefits conferred? It is not denied that

in the absence of the constitutional amendment referred to this could be done. If the legislature may pass a law pertaining to special assessments dealing with but one of the four classes of cities, without regard to the question of whether such a law might not with equal propriety be made to include one or more of the classes not included, then the act under consideration should be sustained. Stated in another way, if it must be sustained on the ground that the act itself makes a legitimate classification of cities, we fail to see how it can be. It is obvious that the only constitutional provisions involved are those already referred to. The law must be a general one, and it must be uniform in its operation within the meaning of sec. 32 to be valid.

The first requisite may be found without difficulty. Laws pertaining only to one class of cities have been held to be general. *Boyd v. Milwaukee*, 92 Wis. 456, 66 N. W. 603; *Johnson v. Milwaukee*, 88 Wis. 383, 60 N. W. 270; *Weise v. Green Bay*, 143 Wis. 198, 126 N. W. 681. The fact that there is but one city which falls within the class legislated for makes no difference. *State ex rel. Risch v. Trustees*, 121 Wis. 44, 98 N. W. 954. The uniformity requirement presents a much graver difficulty. The decided cases that serve to throw light upon the question are not very numerous and are not entirely in harmony.

The statutes upheld in *Johnson v. Milwaukee, supra,* were subject to the same objection that is here made to ch. 575, Laws of 1911. One of them, ch. 224, Laws of 1893, applied to sewers in all cities organized under *special* charters. The other, ch. 311, Laws of 1893, related to the issuance of bonds in all cities containing a population of 3,000 or more and operating under *special* charters. This legislation was upheld on the ground that it related to an existing class of cities recognized by the constitution and that such legislation was not in conflict with secs. 31 and 32 of art. IV of the constitution or either of them. In other words, it was necessarily

held that the legislation attacked was not only general, but was uniform within the meaning of sec. 32, art. IV. Now the court has in effect said in this case that if we have two cities of substantially the same size and where conditions are alike, such as we would expect to find in the cities of Neenah and Menasha for instance, and one happens to be organized under the general charter law and the other under a special charter, it is competent for the legislature to grant powers and privileges to one which it may deny to the other. It would seem that the uniformity which was found in that case could only exist on the theory that, inasmuch as the laws applied equally to all members of a class, the call for uniformity was satisfied although there was no obvious reason for not extending the acts to cities outside the classes legislated for. These two acts of 1893 were not copies of provisions contained in the general charter law. Although the precise question raised in the case at bar was, as it would seem, decided as a matter of necessity, it was not discussed, and for that reason the case is not as valuable an authority as it otherwise would be.

In *Adams v. Beloit,* 105 Wis. 363, 369, 81 N. W. 869, it was said:

"It is not necessary, in order to make a law affecting municipal corporations a general law, that it should affect every city in the state. Cities may be classified, and, if the classification be proper, *laws may be passed affecting only a single class,* and such laws will be general laws, and *uniform in their operation throughout the state,* within the meaning of the constitution."

The foregoing language is quoted and approved in *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954, where it is further said:

"Legislation since the amendment [of sec. 31, art. IV] applicable only to a single class of cities, the first as well as others, has been common and never condemned in any adjudication by this court, *Burnham v. Milwaukee* [98 Wis. 128, 73 N. W. 1018] not being an exception." Page 55.

In this case it was further said:

"The law of 1899 referred to an existing class of cities created for the purpose of enabling the legislature to deal with them separately from all others; not to deal with them for a particular purpose, but for all purposes where legislation for a class was permissible at all." Page 56.

In addition to using the language quoted in *Adams v. Beloit,* the court sustained a law the constitutionality of which was open to graver doubt than is the validity of ch. 575, Laws of 1911. It was held that a law which permitted cities existing under special charters to adopt the provisions of the general charter law pertaining to any subject, in lieu of the provisions of the special charter dealing with such subject, was valid. This law was attacked on the ground that it was neither general nor uniform in its operation and because the legislature attempted to do by indirection what it could not do by direct legislation. These objections were overruled, and, while the court subsequently said in *State ex rel. Boycott v. La Crosse,* 107 Wis. 654, 84 N. W. 242, that the doctrine of the *Beloit Case* should not be extended, it also approved what had been said in that case.

The cases referred to show that the words "uniform in their operation throughout the state," as used in sec. 32 of art. IV, Const., received in a certain sense a restricted meaning when applied to laws dealing with street improvements in cities. They certainly justify the legislature in assuming that it might without violating said section pass ch. 575, Laws of 1911. Since *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270, was decided in 1894, many acts have been passed dealing with cities of the first class, in reference to which it would be found difficult to find any special reason for limiting their application to cities of the first class, and in reference to which it is quite obvious no good reason existed for so limiting their operation.

However, when the case of *Smith v. Burlington,* 129 Wis. 336, 109 N. W. 79, came before the court, it apparently took

the view that an act applicable to cities of the fourth class must be sustained on the ground that it presented a case of legitimate classification and it was sustained on that ground. It is on this case that appellants place their main reliance as authority, and candor must compel the admission that it supports the position of the appellants. Had the court held that the law under discussion could not be justified as permissible classification and then declared it void for that reason, the case would be in exact accord with the position here taken by the appellants.

The change by which it was sought to govern cities by general and uniform laws instead of by special enactments relating to individual cities was radical and in the nature of an experiment. It was apparently difficult for cities to readily adapt themselves to new conditions; so statutes were enacted, notably ch. 312, Laws of 1893, which came dangerously close to trenching on the constitution as recently amended. The court was soon called upon to decide whether or not these laws were valid, and at once committed itself to the policy of allowing the greatest freedom possible for legislative action consistent with a reasonable interpretation of the constitution. So it will be seen from the cases cited that classification was upheld and that laws applicable to a class which included but a single city were held to be general and uniform, and it was further decided that a law permitting any city existing under a special charter to adopt a complete and integral part of the general charter law was also general and uniform. We think it was further decided that the legislature might within certain lines legislate for a single class of cities, regardless of any question of classification, if the legislation was appropriate for the class legislated for. A contrary rule would tend toward confusion and to promote endless litigation. In passing such an act as the one under consideration the legislature must determine that it is proper and appropriate for the class to which it applies. Must it also determine

that it is neither proper nor appropriate to extend its operation to any other class, and must its conclusion in this regard be subject to review by the courts? We think in view of the meaning that has already been given to the word "general" and the phrase "uniform in their operation," found in sec. 32, art. IV, of the constitution, as applied to legislation of the kind under consideration, the question should be answered in the negative, and that anything that is said to the contrary in the *Burlington Case* should not be approved. The law in question is certainly general. Applying as it does to all cities within the class legislated for, it is uniform in its application within the meaning of that term as it has been interpreted in the cases cited. We therefore hold that ch. 575, Laws of 1911, does not violate sub. 9 of sec. 31 of art. IV of the constitution, nor sec. 32 of the same article.

*By the Court.*—Judgment affirmed.