120     SUPREME COURT OF WISCONSIN.   [MAY

State ex rel. Binner v. Buer, 174 Wis. 120.

STATE EX REL. BINNER, Plaintiff, vs. BUER and others, Defendants.

*February 12—May 3, 1921.*

*Elections: Nonpartisan elections in Milwaukee county: Constitutional law: Equality under the law: Legislature: Power to enact laws: Constitutional restraints: Uniform county government: Judges not county officers: Political parties: Right to party designation on ballot: Special legislation: Action to restrain enforcement of invalid law: Declaratory relief.*

1. An action to restrain boards of election commissioners from enforcing and following the provisions of alleged unconstitutional statutes in the conduct of an election and future elections presents an existing controversy calling for judicial cognizance independent of sec. 2687m, Stats., authorizing the maintenance of equitable actions to obtain declaratory relief. (Questions relative to the constitutionality of sec. 2687m are not involved in this case.)

2. A voter is entitled to the same right of suffrage in the election of a public officer that is accorded to all other electors of the territory from or for which such officer is elected, and he cannot be hampered or trammeled in the exercise of such right except as every other voter in such territory is likewise restricted.

3. Where it is claimed that the legislature has not the power to enact certain legislation, it must be by virtue of some constitutional provision, and the burden of pointing out the provision rests upon the person denying the existence of the power.

4. Sub. (8), sec. 5.26, Stats., providing for the holding of a primary election in counties with a specified population two weeks prior to the regular election, where more than a specified number of candidates are nominated for certain offices filled by nonpartisan nomination and election, does not violate sec. 1, amendm. XIV, Const. U. S., nor sec. 1, art. I, Const. Wis., declaring that all men are born equally free and independent and have certain inherent rights, as neither of those provisions entitles a voter to demand that an election in one county shall be conducted in exactly the same manner as in other counties; his rights of equality are fully preserved when those rights are the same as those enjoyed by other citizens similarly situated.

State ex rel. Binner v. Buer, 174 Wis. 120.

5. Sec. 23, art. IV, Const., providing that the legislature shall establish but one system of county government, which shall be as nearly uniform as practicable, has no application to the election of judicial officers, they not being county officers.

6. Said sec. 23 has no application to the election of supervisors in Milwaukee county, in view of ch. 398, Laws 1907 (held a valid enactment in *State ex rel. Scanlan v. Archibold,* 146 Wis. 363), providing for the election of a supervisor from each Assembly district in counties with a population of 250,000, as supervisors in Milwaukee county cannot be elected, under sec. 59.03, Stats., in the same manner as in other parts of the state.

7. Sub. (8), sec. 5.26, Stats., providing for a primary election two weeks prior to the election of members of the board of school directors in any city of the first class when eleven or more candidates have been proposed, is not invalid as special legislation, a law applicable to a single class of cities being a general law.

8. Sec. 6.24 and sub. (8), sec. 5.26, Stats., providing for the nonpartisan nomination and election of judicial and school officers and members of county boards in counties with a population exceeding 250,000, is not invalid though the constitution impliedly preserves to the elector the right to express his views on governmental questions through the medium of political parties; but this implied provision is not as rigid or unyielding as are the express provisions of the constitution and must be interpreted in the light of the social and economic ideals of the time. The instrumentality through which the right of suffrage is expressed may be effectually regulated according to the lights, standards, and ideals of the age, as it is subject to such changes and improvements as experience and inventive genius may devise.

9. Ch. 9, Laws 1911, relating to the civil court of Milwaukee county, is not unconstitutional as a private or local law embracing more than one subject not sufficiently expressed in the title. *In re Southern Wis. Power Co.* 140 Wis. 245, followed.

ORIGINAL ACTION in this court.

*Edwin W. Knappe* and *Horace B. Walmsley,* both of Milwaukee, for the plaintiff.

For the defendants there was a brief by *Winfred C. Zabel,* district attorney of Milwaukee county, *William L. Tibbs*

and *Daniel W. Sullivan,* assistant district attorneys, *Clifton Williams,* city attorney, and *John M. Niven,* first assistant city attorney; and the cause was argued orally by *Mr. Niven, Mr. Sullivan, Mr. Tibbs, Mr. Zabel,* and *W. J. Morgan,* attorney general.

The following opinion was filed February 16, 1921:

PER CURIAM.   This is an original action brought in this court, pursuant to leave first granted, to restrain the county board of election commissioners of Milwaukee county and the board of election commissioners of the city of Milwaukee from acting under and pursuant to the provisions of sub. (8), sec. 5.26, Stats.   The defendants interposed a general demurrer to the complaint.

The plaintiff contends that the section contravenes several provisions of the constitution and that by reason thereof it is null and void.   The specific objections of the plaintiff to the validity of this statutory provision will be considered in detail in an opinion to be filed later.   It will suffice for the present purposes to say that all objections urged by plaintiff to the validity of the law have received the consideration of the court, and it is now determined and adjudged that the said law is in all respects a constitutional and valid enactment.

The demurrer to the complaint is sustained and the complaint is dismissed on the merits.

The following opinion was filed May 3, 1921:

OWEN, J.   As stated in the *per curiam* memorandum heretofore filed, this is an original action brought in this court to restrain the county board of election commissioners of Milwaukee county and the board of election commissioners of the city of Milwaukee from acting under and pursuant to the provisions of sub. (8), sec. 5.26, Stats.   The

State ex rel. Binner v. Buer, 174 Wis. 120.

action is referred to in plaintiff's brief as one for declaratory relief, under the provisions of sec. 2687$m$.  We do not, however, so regard it.  The complaint plainly sets forth a state of facts entitling plaintiff to the issuance of an injunction if his contention concerning the unconstitutionality of the law in question be sustained.  It sets forth that it is the duty of the county board of election commissioners of Milwaukee county to prepare and furnish the ballots to be used at and to conduct the election to be held on the first Tuesday of April, 1921, in the county of Milwaukee, of county judges of Milwaukee county, civil court judges of Milwaukee county, and a circuit judge for the Second judicial circuit of the state of Wisconsin, and that they threaten to, and unless restrained will, conduct said election pursuant to said statutory provision.  A similar allegation is made with reference to the board of election commissioners of the city .of Milwaukee, and prays that said boards of election commissioners be restrained from enforcing and following the provisions of said aforementioned statutes in the conduct of the election to be held on the first Tuesday of April, 1921, and all future elections, and for such further order or relief as the court may deem just and equitable.

This presents an existing controversy and a situation calling for judicial cognizance independent of sec. 2687$m$, providing for the maintenance of equitable actions to obtain declaratory relief.  No action under sec. 2687$m$ has come before us, and when one does, questions concerning the constitutionality of the law will arise at the very threshold which will call for the most serious consideration of the court.  *Anway v. Grand Rapids R. Co.* (Mich.) 179 N. W. 350.  This observation is made for the reason that this action seems to be considered by the plaintiff as one brought under that section, and it seems best that it should be distinctly understood that the constitutionality of the law has neither been overlooked nor affirmed *sub silentio*.

State ex rel. Binner v. Buer, 174 Wis. '120.

Sec. 6.24 of the Statutes provides:

"No candidate for any judicial, school, member of county board in counties having a population of two hundred fifty thousand or more, or elective city office shall be elected upon any party ticket, nor shall any designation of party or principle represented be printed on the ballot used at the election of any such candidate. The statement 'a nonpartisan judiciary' or 'a nonpartisan superintendency,' or 'a nonpartisan administration' shall not be deemed a designation of party or principle within the meaning of this section. The election of members of such county boards, except as provided by subsection (5) of section 17.21 in cases of vacancy, shall be held and conducted in the manner provided for the election of judicial officers, except police justices or justices of the peace in counties having a population of three hundred thousand or more, and containing an entire judicial circuit for which more than one circuit judge is provided by law."

Sec. 5.26 of the Statutes provides for independent or nonpartisan nominations, and provides that such nominations shall be made by nomination papers, prescribes the form thereof, specifies where they are to be filed, etc. This is the manner in which the officers designated in sec. 6.24 are to be nominated. Sub. (8) of sec. 5.26 relates primarily to the officers specified in sec. 6.24 and provides, in effect, that where more than two candidates are nominated for the same office, a primary election shall be held two weeks prior to the regular election. The names of all those for whom nomination papers have been filed shall be placed upon the primary election ballot, and in each instance the two receiving the highest number of votes for each respective office shall be deemed nominated for such office, and their names and none other shall be placed upon the ballot at the general election as candidates for the offices for which they were nominated at the primary election. As it relates to members of the board of school directors in any city of the first class, it provides that this primary election shall be held when

there have been eleven or more candidates proposed by nomination papers. The reason for this is that there are five members of the school board to be elected, and the idea of the law is that the primary or preliminary election shall eliminate all candidates except two for each office, there being five school directors to elect. It is provided that ten shall be nominated at the primary and each voter is entitled to vote for five candidates. This but follows the general scheme of presenting to the electors at the general election two candidates for each office. This scheme relates to populous counties and, as a matter of fact, is applicable only to Milwaukee county.

It is claimed by plaintiff that the legislation is unconstitutional because it amounts to special or class legislation, and that the classification has no basis germane to the purposes of the legislation. It is pointed out that in no other county of the state is this primary or elimination election provided for the officers mentioned in sub. (8) of sec. 5.26; that there is no substantial basis justifying a special election scheme such as is embodied in the provision under consideration for Milwaukee county. On the part of the defendants it is argued that the classification is justified by virtue of density of population in that county. This leads us to a consideration of the constitutional rights enjoyed by plaintiff as well as the power of the legislature to enact special legislation.

First, what are the rights of plaintiff in respect to matters under consideration? Manifestly, in the matter of elections of public officers he is entitled to the same right of suffrage that is accorded to all other electors of his election district, meaning thereby the territory from or for which a given officer is elected. He cannot be hampered or trammeled in the exercise of that right except as every other voter in the election district is likewise restricted. The law under consideration accords to him a right to vote in the same manner

and under like conditions enjoyed by every other voter in the election district, so that, so far as the voters of the city or county of Milwaukee are concerned, they are on a perfect equality with reference to all things pertaining to the exercise of the right of suffrage in the election of the city and county officers specified in the provision under consideration. Plaintiff, however, claims that his constitutional right is not only that of equality with all other voters in the election district in which he resides, but that he is entitled to exercise that right in the same manner that it is exercised by the voters in other counties of the state with reference to the same or similar officers, and that the legislature cannot provide for an elimination election for judicial officers, for instance in Milwaukee county, unless it provides the same thing in all other counties of the state. If the legislature does not possess this power, it must be by virtue of some constitutional provision, and the burden of pointing out such provision rests upon the plaintiff.

"As often said and always conceded, our state constitution is not so much a grant as a limitation of powers; and hence the state legislature has authority to exercise any and all legislative powers not delegated to the federal government nor expressly or by necessary implication prohibited by the national or state constitution." *Bittenhaus v. Johnston,* 92 Wis. 588 (66 N. W. 805), at p. 595.

Sec. 31 of art. IV of the constitution prohibits the enactment of any special or private laws in the cases therein mentioned, but there is nothing in that section which expressly or by the remotest inference prohibits the legislature from enacting special laws for the conduct of elections in the various communities of the state. In fact this was notoriously done when the legislature exercised the power of incorporating cities and villages by special act. The special charters incorporating such cities or villages included provisions for the holding of municipal elections. These were not by general laws but by special act. Sec. 31 of art.

IV now contains a provision prohibiting the incorporation of cities or villages by special act, hence all such laws are now by general act. The provision, however, goes to the incorporation of cities or villages, and, as the greater includes the lesser, the scheme of municipal elections must be as general as the acts of incorporation for municipalities. But that does not include the election of county officers. We find no express restriction upon the power of the legislature to provide that in a populous county like Milwaukee there shall be an elimination of a multiplicity of candidates for the various offices by a preliminary election, and that but two candidates for each office shall be presented to the electors at the election.

Plaintiff refers to sec. 1 of the Fourteenth amendment of the constitution of the United States, which provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;" and to sec. 1 of art. I of the state constitution, which provides that "All men are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness. To secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed." These constitutional provisions secure to every citizen the rights and privileges enjoyed by all other citizens similarly situated. He enjoys the right to vote for judicial and school officers of Milwaukee county in the same manner, at the same time, and with the same effectiveness that any other elector of that county enjoys. No one except electors of that county are interested in the election of those officers. Neither is the plaintiff, who is an elector in Milwaukee county, interested in the election of similar officers in any other county of the state. He has no right to demand that an election for judicial or school

officers in Milwaukee county be conducted in exactly the
same manner it is conducted in other counties of the state.
His rights are not to be determined by a comparison with
the rights enjoyed by citizens of other counties in which
he has no interest.   The rights of equality guaranteed to
him by the state and federal constitutions are fully pre-
served when those rights are the same as those enjoyed by
other citizens similarly situated, which in this instance are
electors of Milwaukee county.   This conclusion goes far
towards disposing of the manifold objections raised by
plaintiff to the validity of this legislation, to which special
reference will not be made.   There are, however, some
considerations peculiar to each class of officers mentioned in
sub. (8), sec. 5.26, to be considered.

As to judicial officers and members of the county board
of supervisors, it is urged that the legislation under con-
sideration offends against sec. 23 of art. IV of the consti-
tution, which provides: "The legislature shall establish but
one system of town and county government, which shall be
as nearly uniform as practicable."   This contention, so far
as it relates to judicial officers, may be disposed of by a
reference to our former decisions, in which it has been settled
that the judicial power of the state is separate and distinct
from the system of county government referred to in sec.
23 of art. IV, and that judges are not county officers. *State
ex rel. Gubbins v. Anson,* 132 Wis. 461, 112 N. W. 475;
*Milwaukee Co. v. Halsey,* 149 Wis. 82, 136 N. W. 139.

In counties having a population of at least 250,000 a
supervisor is elected from each Assembly district.   In other
counties a supervisor is elected from each town, city, ward,
and incorporated village.   Sec. 59.03, Stats.   Prior to the
enactment of ch. 398, Laws 1907, the county board of
supervisors in every county was composed of the chairmen
of the town boards and a supervisor elected from each city,
ward, and incorporated village.   By the latter act it was

State ex rel. Binner v. Buer, 174 Wis. 120.

provided that in counties having a population of at least 250,000 a supervisor should be elected from each Assembly district. The constitutionality of this law was sustained in *State ex rel. Scanlan v. Archibold,* 146 Wis. 363, 131 N. W. 895. Assuming, therefore, that supervisors are county officers, the constitutionality of the act providing that they be elected from Assembly districts in counties having a population of 250,000 or over, instead of from towns, cities, wards, or incorporated villages, is no longer an open question. The constitutionality of the act providing for their election from Assembly districts being established, it necessarily follows that supervisors in Milwaukee county cannot be elected in the same manner that supervisors are elected in other parts of the state, because an Assembly district includes a number of towns, and perhaps incorporated villages and cities. If their election from Assembly districts instead of from towns, cities, wards, and incorporated villages be constitutional, then it follows that the legislature is at liberty to provide a different method for their election without offending against the provisions of the state constitution requiring a uniform system of county government, and that the law in question cannot be condemned because it conflicts with that provision of the constitution so far as the election of supervisors is concerned.

While the provision of sub. (8), sec. 5.26, Stats., relating to the election of school directors in cities of the first class is assailed as special legislation, we must confess our inability to appreciate the force of this contention. The general charter law provides for cities of the first class. Ch. 459, Laws 1907, provided that

"The public schools in every city of the first class, whether organized under general or special charter, shall be under the general management, control and supervision of a board of school directors, consisting of fifteen members from the city at large, selected as provided in this act."

It has been settled that laws applicable to a single class of cities are general laws. *Milwaukee v. Reiff*, 157 Wis. 226, 146 N. W. 1130; *State ex rel. Bloomer v. Canavan*, 155 Wis. 398, 145 N. W. 44; *Wis. Cent. R. Co. v. Superior*, 152 Wis. 464, 140 N. W. 79. Sub. (8), sec. 5.26, Stats., provides for the election of these school directors. It is applicable to all cities of the first class. It is certainly a general law, as the classification therein made (cities of the first class) is firmly established by the decisions of this court as a valid classification.

It was contended upon the oral argument that the law is unconstitutional because it provides for a nonpartisan nomination and election. In this connection it is maintained that the constitution protects and preserves political parties, and that any law providing for an election which deprives a political party of the right to put a ticket in the field and have the names of its candidates placed on the ballot in a manner to indicate their political affiliations is unconstitutional and void. The case of *State ex rel. McGrael v. Phelps*, 144 Wis. 1, 128 N. W. 1041, is relied upon as firmly intrenching that principle in the jurisprudence of this state. In that case it was said that inherent in the right to vote "exists a right of persons to combine according to their political beliefs, and right, so far as not reasonably prohibited by law, of each group to possess and use freely all the machinery for increasing the power of numbers by acting as a unit—over the power acting individually, to effect a desired political end,—goes without saying. This, and all courts which have dealt with the matter, have so declared, and recognized that political parties with freedom of action, as broad as freedom of use of the elective franchise, to the end that the public welfare, for which governments exist may be best promoted,—are essential to our form thereof." Page 16. A perusal of the opinion in that case, as well as the opinions in cases from other

jurisdictions therein cited, indicates that the preservation of political parties is impliedly secured by the constitution. It is conceded, of course, that the constitution does not in express terms provide that political parties shall be eternally protected. Neither do we think that such is the spirit of the various decisions bearing upon this question.

The right of suffrage is secured by constitutional provision, and it is argued that in order to make this right effectual it is necessary to secure to the voter the right to express his views concerning governmental policies through the medium of a political party. This, of course, is on the assumption that group action on the part of voters, each respective group being designated as a political party, is essential under our form and scheme of government, as the establishment of principles rather than the choice of men generally enlists the primary interest of the voter. With this there can be no serious quarrel. But the question arises whether this be true if in the course of time, in the evolution of society and in the progress of governmental development, the preservation of political parties shall be deemed destructive rather than promotive of the public interest. We should bear in mind that the express right preserved by the constitution is the right to vote. This right is coupled by implication with the institution designed and employed by society for its effectual exercise. As any interference with the instrumentality through which the right may be most effectually exercised, according to existing standards and ideals of society, impairs the right, the constitutional protection extends to such instrumentality as well as the right. The right is fixed and permanent, but as the agency through which it is exercised is an invention of society, it is subject to the changes inevitably wrought from time to time by social and economic inventive genius. Society is in a progressive state moving on towards perfection. "The political or philosophical aphorism of one

generation is doubted by the next, and entirely discarded by the third; the race moves forward constantly, and no Canute can stay its progress." While the existence of political parties with which the individual voter may affiliate and through which he may give expression to his views concerning governmental policies is now deemed essential to our scheme of government, who can say that this view may not be discarded by future generations and the existence of political parties be held inimical rather than promotive of the general welfare? Indeed, sentiment along this line has crystallized since the decision in *State ex rel. McGrael v. Phelps, supra,* was announced. The language of that decision is all-inclusive, and extends to municipal as well as state and national elections. Public sentiment has rapidly crystallized since that time upon the proposition that party politics has no proper place in the conduct of municipal elections or of municipal affairs. The crystallization of this sentiment has been followed by legislation in this state having for its purpose the utter elimination of partisan considerations from municipal elections.

The first legislation of this character was ch. 670, Laws 1907, which provided for a nonpartisan election in cities adopting the provisions of the law. From the optional form of the law it may be inferred that it was in response to a growing, although perhaps a divided, sentiment upon the question. The law was not compulsory upon all cities, but was made available to the municipalities where the public sentiment favored a nonpartisan administration of municipal affairs. Evidently sentiment upon the question developed rapidly, for by the provisions of ch. 11 of the special session of 1912 it was provided that "no designation of any party or principle shall be used for any candidate for an elective office in any city on nomination papers or ballots at any general municipal election or primary therefor." The act then provides the machinery for the conduct

State ex rel. Binner v. Buer, 174 Wis. 120.

of a primary and election along purely nonpartisan lines. This law has remained upon the statute books ever since, with no attempt or disposition to repeal it. This is indicative of a complete change of public sentiment with reference to partisan politics in municipal affairs. It was brought about, no doubt, as a result of numerous exposures of graft and scandal in the administration of public affairs in many of the large cities of the nation.

In view of this unmistakable change of public sentiment, is it to be claimed that partisan politics must persist in municipal affairs because it is said that the continued existence of political parties is guaranteed by constitutional provision? We think not. We do not think an amendment of the constitution is necessary in order to substitute a nonpartisan for a partisan form of municipal election. In this we give the same force and scope to the constitutional provision under consideration in *State ex rel. McGrael v. Phelps, supra,* as was there accorded it. As already stated, the express right conferred by the constitution is the right to vote. This implies the right to make use of the vote in a most effectual manner. Under conditions existing at the time of that decision this implied the right to affiliate with, and to express one's views through the medium of, a political party. So far as municipal elections are concerned, this idea is now repudiated by common consent, and the settled convictions of the people of this state now are to the effect that the end to be attained by the exercise of the right of suffrage, to wit, good and efficient government and the promotion of the general welfare, can best be attained in municipal affairs not through partisan politics but along nonpartisan lines. The same reasons, therefore, which have prompted this and other courts to say that the existence of political parties is protected by constitutional provision compel us to say that in municipal affairs a nonpartisan system of elections is likewise protected by virtue of the

express provision of the constitution conferring upon a certain class of citizens the right of suffrage. In other words, the nonpartisan system of elections in municipal affairs furnishes the effectual means for the exercise of that right, in the light of existing social standards and ideals.

Did the constitution expressly preserve the institution known as a political party, we could not arrive at this conclusion. But there is no such express provision. It is an implied provision with which we are here dealing—an implied provision which preserves to the elector the means through which the right may be effectually exercised according to the lights, standards, and ideals of the age. The constitution makes no attempt to define or give immutable shape to that instrumentality. The instrumentality, therefore, is not a constitutional device, but rather an invention of society, and as such is subject to such changes and improvements as the experience and inventive genius of society may devise. The instrumentality protected by the constitution is not one of specific and unyielding form and shape, but it is the most recent, most perfect, and most effectual instrumentality evolved by the experience and constantly increasing enlightenment of society. This court has said that implied provisions of the constitution are not as rigid and unyielding as the express commands thereof, and that they are to be interpreted in the light of the social and economic ideals of the time. This idea finds most lucid expression in the following language of the late Mr. Chief Justice WINSLOW in the case of *Borgnis v. Falk Co.* 147 Wis. 327 (133 N. W. 209), at page 349:

"Where there is no express command or prohibition, but only general language or policy to be considered, the conditions prevailing at the time of its adoption must have their due weight; but the changed social, economic, and governmental conditions and ideals of the time, as well as the problems which the changes have produced, must also logically enter into the consideration, and become influential

factors in the settlement of problems of construction and interpretation."

This is also the reason why a decision of the supreme court of the United States declaring unconstitutional a law of the state of New York limiting the hours of labor for bakers (*Lochner v. New York,* 198 U. S. 45, 25 Sup. Ct. 539) is not necessarily inconsistent with a later decision of that court declaring constitutional a law of the state of Oregon limiting the hours of labor of persons employed "in any mill, factory or manufacturing establishment." *Bunting v. Oregon,* 243 U. S. 426, 37 Sup. Ct. 435.

The social and economic standards and ideals of the times unquestionably influenced those apparently conflicting decisions. During the interim from 1905, when the New York case was decided, to 1917, when the decision in the Oregon case was announced, scientific activity had demonstrated that there is a limit to the hours during which men and women may labor without deleterious results to health inimical to public welfare and future generations. Therefore, legislation substantially similar to that held to constitute an unwarranted interference with the right to contract in 1905, was held to be a legitimate exercise of the police power of the state in 1917.

Instances taken from the reports of judicial decisions could be multiplied to illustrate the influence which changed economic conditions and the varying ideals of society have had upon the interpretation of implied provisions of constitutions, or, perhaps more properly stated, to illustrate the character of implied provisions which the courts have read into constitutions, but to do so would prolong this opinion without serving any good purpose.

That part of the provision of sub. (8), sec. 5.26, relating to civil courts in Milwaukee county was first enacted as ch. 9, Laws 1911. It is contended that law is unconstitutional because it was a private or local law, embracing more than one

subject, and that subject was not sufficiently expressed in the title. We regard the contention as hypercritical. The law on this subject is comprehensively reviewed in the case of *In re Southern Wis. P. Co.* 140 Wis. 245, 122 N. W. 801, and it is unnecessary for us to discuss this question any further than to say that the principles of that case negative plaintiff's contention.

The foregoing sufficiently indicates the reasons prompting the court in rendering the judgment heretofore entered dismissing plaintiff's complaint.