FEDERAL PAVING CORPORATION, Appellant, vs. PRUDISCH, City Treasurer, and others, ·Respondents.

*May 10—September 10, 1940.*

The cause was submitted for the appellant on the briefs of *Bender, Trump & McIntyre*, attorneys, and *E. L. McIntyre* of counsel, all of Milwaukee, and for the respondent Fred Prudisch on the brief of *Roy R. Stauff* of Milwaukee, and for the respondents Walter A. Bechthold and Walter G. Winding on the brief of *Joseph E. Tierney* of Milwaukee.

The following opinion was filed June 24, 1940:

WICKHEM, J. The controversy involved in this case has been before the court in the cases of *Bechthold v. Wauwatosa,* 228 Wis. 544, 277 N. W. 657, 280 N. W. 320, and *Federal Paving Corp. v. Wauwatosa,* 231 Wis. 655, 286 N. W. 546. In the first case this court held a street-paving contract under which plaintiff sought payment for the contract price void for failure to follow statutory prescriptions concerning the letting of bids. In the second, this court held that plaintiff could not maintain an action against the city for restitution of the reasonable value of the paving.

Following the last of the two decisions, the legislature enacted sec. 62.215, Stats., which provides as follows:

*"Authority to pay for public work done in good faith.*
(1) Whenever any city shall have received prior to January 1, 1939, and shall be enjoying any benefits or improvements furnished under any contract which shall have been or shall hereafter be declared as imposing no legal obligation upon such city, and which contract was entered into in good faith and was fully performed and the work accepted by the proper city officers, so as to impose a moral obligation upon such city to pay therefor, such city may, by resolution of its common council and in consideration of such moral obligation, pay to the person furnishing such benefits or improvements the fair and reasonable value of such benefits and improvements.

"(2) The fair and reasonable value of such benefits and improvements and the funds out of which such payment shall be made shall be determined by the common council of such city. Such payments may be made out of any available funds, and said common council shall have authority, if necessary, to levy and collect taxes in sufficient amount to meet such payment.

"(3) Where special assessments shall have been levied for the benefits or improvements mentioned in subsections (1) and (2) of this section, the common council of such city may validate such special assessments and apply the proceeds thereof toward payment for such benefits and improvements."

Acting under the authority of this section, the common council of the city of Wauwatosa adopted a resolution authorizing and directing the payment to plaintiff by the proper city officers of the sum of $24,596.78. The resolution recites the necessity of the improvement in question, the fact that plans and specifications were prepared, and advertisements for bids had, and bids received of which plaintiff's was the lowest; that the contract was let to the plaintiff and plaintiff fully completed the performance of the con-

tract; that the work was approved and accepted by the city; that the supreme court of the state of Wisconsin has rendered a decision declaring the contract to have imposed no legal obligation upon the city solely because of a failure to publish the advertisement for bids once a week for a full two successive weeks; that the city has enjoyed and is enjoying the benefits of the improvements; that the contract was entered in good faith; and that no payment has been made to the contractor for the improvement; that there rests upon the city a moral obligation to pay for the improvement; and that the city has levied special assessments upon the properties abutting the improvement. It is resolved that the fair and reasonable value of the benefits was $27,596.78, less $3,000 which will be required for repair of the pavement; that the special assessments heretofore levied are validated; that the "proper city officials of said city be, and they hereby are, authorized and instructed to draw and deliver a city order to Federal Paving Corporation in the sum of $24,-596.78, . . . provided, the moneys involved shall now by this resolution be legally payable." A city order was thereupon executed by the city clerk and the comptroller directing the defendant city treasurer to pay the said sum out of the city funds. The comptroller duly certified that there were sufficient funds in the possession of the city to pay the same, and this is still the situation. The city treasurer refused and still refuses to make this payment. The contention of the city treasurer and the intervening defendants was that sec. 62.215, Stats., is invalid as special legislation under secs. 31 and 32 of art. IV, constitution. The trial court sustained this position, and held that while there may be classifications of cities, all classifications must satisfy all of the following requisites: (1) They must be based upon substantial distinctions which make one class really different from another; (2) they must be germane to the purpose of the law; (3) *they must not be based upon existing circum-*

*stances;* (4) the law must apply equally to every member of the class; (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of the substantially different legislation. *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270. Upon the basis of rule (3), the trial court concluded that sec. 62.215 classified cities into those which prior to January 1, 1939, had entered into such contracts as are described in the section and those which after that date had entered such contracts; that the section was based upon existing circumstances and created a closed class; that no sufficient reason existed for the classification; and that the section was to be treated as a special law, void under the provisions of sec. 31, 9th, art. IV, constitution, which prohibits the legislature from enacting any special or private law "for incorporating any city, town or village, or to amend the charter thereof." Although the matter is not free from difficulty, we conclude that the conclusions of the trial court were sound.

By its terms, sec. 62.215, Stats., applies to all cities, and much of the argument in support of its validity is based upon this circumstance. That is to say, it is appellant's claim that since the section under examination applies to all cities, there is no question of classification and *a fortiori* no room for the contention that a closed class is created. The difficulty with appellant's contention is that although the terms of the section are in no way restricted, sec. 62.03 excludes from its provisions cities of the first class operating under special charters, and hence sec. 62.215 applies only to cities of the second, third, and fourth classes. Thus, we are presented with the question whether a statute applicable only to cities of the second, third, and fourth classes, which purports so to amend their charters as to permit these cities to recognize moral obligations arising out of void contracts entered into prior to January 1, 1939, is a special act creating a closed class into which no other municipality may grow. That it

does so seems to have been established in *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270; *Boyd v. Milwaukee,* 92 Wis. 456, 66 N. W. 603; *Burnham v. Milwaukee,* 98 Wis. 128, 73 N. W. 1018; *Cawker v. Central B. P. Co.* 140 Wis. 25, 121 N. W. 888; and *Neacy v. Drew,* 176 Wis. 348, 187 N. W. 218. These cases have one circumstance in common. The curative acts considered in each case applied only to cities of the first class, and the city of Milwaukee is the only city of that class in the state. It will not be necessary to detail the facts of each of these cases. The most striking example is the *Neacy Case, supra.* This was an action by plaintiff as a taxpayer of the city of Milwaukee to recover on behalf of himself and all others similarly situated for the benefit of the city the sum of $155,204.62, this being the amount theretofore paid by the city of Milwaukee to a concrete-products company under a contract involving erection of concrete posts for a municipal lighting system. In previous litigation (*Neacy v. Milwaukee,* 171 Wis. 311, 176 N. W. 871) this court had held the contract void for the reasons, (1) that the commissioner of public works exceeded his authority by exercising power properly vested in the common council; (2) that the contract violated the charter of the city of Milwaukee in that the article contracted for was only capable of being manufactured by patented machines and because certain provisions of the city charter were not complied with; and (3) that there was no competition in the letting of the contract. Shortly after the decision of this court was handed down, ch. 10, Laws of Sp. Sess. 1920, was passed adding to the statutes sec. 925—91*a*, which provided as follows:

"Any contract for the purchase of concrete posts or poles in connection with the municipal lighting system of any city of the first class, however incorporated, which has been entered into prior to September 23, 1916, upon which pay-

ments have been made and satisfactory material delivered, and such posts or poles are made by machine covered by patent, which contract has, prior to the first day of May, 1920, been declared invalid due to failure of any such city or its officers to comply with sections 925—90 to 925—91 of the statutes, inclusive, or provisions of the special charter of any such city relating thereto, shall be and hereby is made valid and all payments previously made thereunder or thereafter to be made thereunder are declared valid and binding on any such city and its officers, any provisions of the charter of any such city or of the statutes notwithstanding."

It was held that this curative act was unconstitutional under sec. 31, 9th, art. IV, constitution, because the act applied only to Milwaukee, could never apply to any other city, and therefore was a special law. The court followed the decision in the *Cawker Case, supra,* which held that an act so drafted was as special to the city of Milwaukee as though the city were expressly named and for that reason was unconstitutional and void as a special act seeking to amend a city charter.

At this point it will be convenient to consider another group of cases which at first sight seem inconsistent with those referred to and give considerable color to plaintiff's contentions. These are *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954; *Wisconsin Central R. Co. v. Superior,* 152 Wis. 464, 140 N. W. 79; *State ex rel. Bloomer v. Canavan,* 155 Wis. 398, 145 N. W. 44; *Milwaukee v. Reiff,* 157 Wis. 226, 146 N. W. 1130; *State ex rel. Binner v. Buer,* 174 Wis. 120, 182 N. W. 855. In each of these cases it was held that classification of cities is proper on the basis of population; that the fact that laws pertain only to cities of the first class and that there is only at present one such city do not affect their validity; and that in general the fact that a law applies only to a single class and excludes other classes

of cities does not make it a special law repugnant to the constitutional provisions. Thus, in *State ex rel. Bloomer v. Canavan, supra,* this court said (p. 407):

"Neither do we think the law obnoxious to the constitution because it does not apply to cities of the first class. The classification of cities made by, the general charter law has been sustained in numerous cases. So have acts which legislated for one or more of the classes so named. The classification having been made, it is held that the power of the legislature to legislate for one or more of the classes is quite plenary, although no reason can be advanced why the legislation should be confined to the class or classes covered."

In each of the cases cited, however, the law involved applied not merely to all cities presently in the class but to all cities which might grow into the class. In none of the cases was there any limitation of the law to past facts, which, as in the five cases involving Milwaukee, could be construed to create a closed class and to render the act special for that reason. Once the propriety of classification on the basis of population was settled, no further problem was considered to remain.

Perhaps the most representative of the cases is *Wisconsin Central R. Co. v. Superior,* 152 Wis. 464, 468, 473, 140 N. W. 79. Plaintiffs in that case were property owners who were objecting to assessments against their properties to defray the cost of paving an abutting street. The case turned on the validity of ch. 575, Laws of 1911 (sec. 959—35*a,* Stats.). This statute took away all exemptions from cities of the second class and permitted an assessment for the entire cost of the paving to the full extent of the benefits conferred against abutting property. Up to the time of the enactment of this law property owners in cities of the second class could not be required to pay for the pavement of the street in front of their property with permanent pavement having a concrete foundation to exceed $3 per square yard for this and former pavement in excess of $3 per square

yard. It was this exemption that was removed. The question stated by the court was, "Can the legislature single out cities of one class and impose burdens on property owners for street improvements that are more onerous than those imposed on other classes of cities, where it is apparent that no substantial reason exists for making the burdens greater in the one case than in some of the others, it being of course conceded that the burdens imposed do not exceed the benefits conferred?" The court said (p. 472) :

"We think it was further decided that the legislature might within certain lines legislate for a single class of cities, regardless of any question of classification, if the legislation was appropriate for the class legislated for. . . . The law in question is certainly general. Applying as it does to all cities within the class legislated for, it is uniform in its application within the meaning of that term as it has been interpreted in the cases cited."

In addition to the foregoing cases which are grouped together for a reason that will hereafter appear should be considered the case of *Schintgen v. La Crosse,* 117 Wis. 158, 166, 94 N. W. 84. That case involved the validity of sec. 1210*d*, Stats. 1898, which provided for the reassessment of invalid special assessments for street improvements. This section provided that when a street improvement has been or may hereafter be made in any city, and a special assessment made against private property therefor, which assessment is invalid because of the work having been done without authority of law, the city authorities shall proceed to make a new assessment of benefits and damages in the manner required by law. It was objected that so far as it pertains to past assessments the law was void because it constituted improper class legislation, and hence was a special or private law, and within the inhibition of sec. 31, 9th, art. IV, constitution. The case of *Boyd v. Milwaukee, supra,* was cited in support of this contention which the court rejected, stating that whether the *Boyd Case* was good law or not, "It

does not control this case, in which a law general in its terms and applicable to every city in the state operating under a special charter is attacked. It has already been held that cities operating under special charters are *ex necessitate* a proper constitutional class and subject to legislation as such. The question of classification is therefore no longer open. The law applies to the entire class, and the fact that all the cities in the class may not be in a situation to make use of its provisions does not make it special or private."

While the court in the *Schintgen Case, supra,* refers to the section as applicable to cities operating under a special charter, the law in fact applies to all void assessments by any municipality. The only restriction to cities operating under special charter comes in the definition of invalidity, the law providing for reassessments where the former assessment was invalid "because of such work having been done without authority of law, . . . either in adopting any part of ch. 40*a* of the statutes of 1898 or otherwise." In other words, the invalidity of an attempt to adopt the provisions of the general charter law was simply listed as one of the circumstances which might result in work being done without authority of law and that made applicable to the situation the conclusion of the court that the fact that all cities of the class might not be in a situation to make use of its provisions did not make the law special or private. This, of course, has nothing to do with classification. If a statute in terms applies to all cities, the circumstance that there may be no factual situation in some of the cities upon which it may operate does not disclose an attempted classification, good or bad.

With the authority in this situation, this court in *White Construction Co. v. Beloit,* 189 Wis. 5, 206 N. W. 908, was called upon to determine the validity of ch. 332, Laws of 1923. This law added to sec. 62.15, Stats., a new subsection which provided in substance that any contract *here-*

*tofore* made by any city of the third class with relation to paving, which contract was within the power of the city to make if let as provided by law, but which was illegal because defectively let or executed, but which shall have been performed or accepted before performance on direction of the board of public works of the city, actually performed, by the doing of the work and the furnishing of the material, and the work so completed devoted to public use is validated and declared legal as though the requirements of law had been observed in the letting and execution. This case differed from the group of Milwaukee cases only in that Beloit was a city of the third class and that there were at least two and possibly more cities of this class in the state. The court in its opinion describes the act as a curative act, and fully reviews the *Boyd, Burnham, Cawker,* and *Neacy Cases, supra,* and holds them applicable to the situation. It also cites the *Adams, Risch, Wisconsin Central, Bloomer,* and *Binner Cases, supra,* and treats those as distinguishable, evidently upon the ground that in the latter cases no closed class was created. The *White Construction Company Case, supra,* represents the considered judgment of this court upon facts so nearly parallel to this as to leave no escape from the conclusion that a curative act, which validates past transactions or permits recognition of liability on the basis of pre-existing facts, must be made applicable to all municipalities if it is to escape condemnation as a special act. Any other conclusion would require departing from a well-established rule and overruling well-considered cases. This we are not inclined to do, although as an original proposition there is much to be said for the contention that having created a proper classification of cities, curative acts applicable to a class or classes should not be treated as creating a subclassification or *a fortiori* a closed class.

There remains to be considered the case of *State ex rel. Voelkel v. Thiessen,* 232 Wis. 126, 286 N. W. 561. That

case involved the validity of sec. 66.06 (10) (d), Stats., which, in part, reads as follows:

"Where in any municipality water mains have been installed or extended and the cost thereof has been in some instances assessed against the abutting owners and in other instances paid by the municipality or any utility therein, notwithstanding the provisions of section 62.19 it may be provided by the governing body of such municipality that all persons who paid any such assessment against any lot or parcel of land may be reimbursed the amount of such assessment regardless of when such assessment was made or paid. Such reimbursement may be made from such funds or earnings of said municipal utility or from such funds of the municipality as the governing body may determine."

The constitutionality of this section was sustained. It will be noted, however, that this section was placed in ch. 66, Stats., the chapter entitled "Municipal Law." There not only was nothing in the act itself to restrict it to any one class of cities, but there is nothing in ch. 66 to restrict the operation of sections contained therein to less than all of the cities of the state.

Plaintiff contends that neither the city treasurer nor the intervening general taxpayers have any standing to raise the question of constitutionality. We deem this unsound, (1) because the resolution directing the treasurer to pay was conditioned upon the lawfulness of the resolution itself, and (2) because if that portion of the resolution ordering payment out of general city funds is void, so also are the validated assessments, and the loss will fall upon general taxpayers unless they can recover upon the treasurer's bond.

*By the Court.*—Judgment affirmed, and cause remanded for further proceedings according to law.

NELSON, J., dissents.

A motion for a rehearing was denied, with $25 costs, on September 10, 1940.